[See Case No. 13,266.]

## Case No. 13,266.

SPRINGER v. FOSTER et al.

[2 Story, 383;[1] 6 Law Rep. 107.]

Circuit Court, D. Massachusetts. May Term, 1842.

FEDERAL COURTS — FOLLOWING STATE ADJUDICATIONS—INSOLVENCY—CONFLICT OF LAWS—COSTS.

1. The courts of the United States follow the decisions of the state tribunals in all questions dependent upon the local statute laws of the states.

[Cited in Perry Manuf'g Co. v. Brown, Case No. 11,015; Jewett v. Garrett, 47 Fed. 631.]

2. No state insolvent laws can discharge the obligations of any other contracts made in the state, than those, which are made between the citizens of that state.

[Cited in Hale v. Baldwin, Case No. 5,913; Baldwin v. Hale, 1 Wall. (68 U. S.) 232; Demeritt v. Exchange Bank, Case No. 3,780.]

[Cited in Deering v. Boyle, 8 Kan. 358; Felch v. Bugbee, 48 Me. 13; Hawley v. Hunt, 27 Iowa, 308; Savoy v. Marsh, 10 Metc. (Mass.) 595; Scribner v. Fisher, 2 Gray, 47.]

3. Where certain bills of exchange were drawn in Pennsylvania on a citizen of Massachusetts, and were accepted by him in Massachusetts, it was *held*, that it was not competent for the legislature of Massachusetts, by the insolvent act of 1838, to discharge the obligation of those contracts.

[Cited in Perry Manuf'g Co. v. Brown, Case No. 11,015.]

[Cited in Whitney v. Whitney, 35 N. H. 470.]

4. *Held*, also, that attachments made on these bills of exchange, by process issued from the courts of the United States, were not dissolved in consequence of the defendant taking advantage of the insolvent law of Massachusetts, although such attachments on process from the state courts would be dissolved.

[Cited in Perry Manuf'g Co., Case No. 11,015.]

[Cited in Howe v. Freeman, 14 Gray, 578; Wendell v. Lebon, 30 Minn. 240, 15 N. W. 112.]

5. Under the circumstances of this case, the trustee was allowed only the costs and expenses incurred by him before the attachment, and the usual sum allowed for his costs, as trustee in this suit.

The only questions in this case arose on the answers of the trustee, Charles Carter. In his first answer, at the October term, 1840, he in substance stated, that on or about the ninth day of November, in the year of our Lord eighteen hundred and thirty-nine, the said Foster did execute and deliver to the said Carter, a deed of assignment of all and singular the property then owned by the said Foster, for the equal benefit of all the creditors of the said Foster, who should become parties thereto, agreeably to the statute of Massachusetts, passed on the fifteenth day of April, in the year eighteen hundred and thirty-six; and which said deed of assignment was duly executed by the said Foster and the respondent, and all the requisites of the said statute fully and completely complied with. That he held possession of the said property till a large portion

1 [Reported by William W. Story, Esq.]

and all of the said property liable to attachment, was attached, and possession thereof taken by Daniel J. Coburn, a deputy of the sheriff of the county of Middlesex, in the said commonwealth of Massachusets, upon a writ issued by the court of common pleas of the said commonwealth, against the said Foster, and in which the respondent was summoned as the trustee of the said Foster, and which suit was still pending; but the respondent was informed, and believed that the plaintiff therein has discontinued against him as trustee; and the said property was afterwards attached by the marshal of the United States for the district of Massachusetts, upon four several writs, all in favor of the present plaintiff, and against the said Foster, the first three of which writs were returnable to the May term of this court, then next after their issuing, to be held, and the last of which writs was that in the present suit. That all, or a major part of the said writs, had been entered in the proper courts, and were then pending, or judgment had been rendered thereon against the said Foster. That in all the said suits, the respondent had been summoned as the trustee of the said Foster, but that in one of the said actions, he had been informed, and believed, that the said plaintiff had discontinued against him as such trustee; that he had commenced suits for the recovery of the said property, against Benjamin F. Varnum, the sheriff of Middlesex, and the United States marshal as aforesaid, which suits were then pending before the supreme judicial court of this commonwealth; that previous to the service of the plaintiff's writ upon him, he had collected of the debts assigned to him by said Foster, by the said deed of assignment, about the sum of eleven hundred and twenty-seven dollars, which, subject to all costs and charges, was then in his hands for the purposes and trusts in the said deed of assignment mentioned and set forth, and which he claimed to hold in virtue of the said deed of assignment, for the said purposes and trusts. That since the making of the said deed of assignment to him by the said Foster, and since the issuing of the said Lowell's and the plaintiff's writs and the attachment of the said property as aforesaid, to wit, on or about the seventeenth day of August, now last past, the said Foster took the benefit of the insolvent law of this commonwealth, passed on the twenty-third day of April, in the year eighteen hundred and thirty-eight, and entitled "An act for the relief of insolvent debtors, and for the more equal distribution of their effects," and that the respondent was thereafter duly chosen and appointed the assignee of the said Foster, under the provisions of the said statute, and accepted the said appointment, and received from the master in chancery, to whom said Foster applied for the benefits of the said statute, a deed of assignment, and the requisite conveyances of all the property of the said Foster, whereby all the said property, under the said statute, became vested in him, the said Carter. In the second answer of the trustee, at the present term, he further stated certain facts, which sufficiently appear in the opinion of the court.

[See Case No. 13,265.]

Benjamin R. Curtis, for plaintiff.
Henry H. Fuller, for the trustee.

STORY, Circuit Justice. When this case was formerly before this court, the question was mooted, whether the act of Massachusetts of the 15th of April, 1836 (chapter 238), providing for the validity of general assignments, like that under which an assignment was made to Carter, as stated in his answer, was repealed by the subsequent insolvent act of the 23d day of April, 1838, ch. 163, the benefit of which had been sought by the defendant, Foster. The same question was then pending in the state court; and, as it was a question of local law, dependent upon the construction of a state statute, the case was ordered to lie over to await the final decision of the state court. That decision has now been made, and the act of 1836 has been declared to be repealed by the insolvent act of 1838. The whole protection, therefore, asserted by the trustee under the act of 1836, is gone, and the general assignment, made to him by Foster, is a mere nullity. So far, then, as the trustee's rights are concerned, and stated in his first answer, that assignment may now be laid entirely out of the case. But upon the second answer, divers other questions have been made, which it is the duty of the court now to consider. And, in the first place, it is said, that the plaintiff's attachment is gone by reason of the proceedings of Foster under the insolvent act, stated in the first answer, which has discharged the obligation of the contracts or drafts, or bills of exchange, upon which the present suit has been brought. These drafts or bills were drawn in Philadelphia, and by the plaintiff, who is a citizen of Pennsylvania, on Foster, who is a citizen of Massachusetts, and were accepted by him at Charlestown in Massachusetts, and of course, they are contracts made in, and governed by the law of Massachusetts. This is true in one sense; but it by no means follows, that it was competent for the legislature of Massachusetts, under the insolvent act of 1838, to discharge the obligation of these contracts. On the contrary, the settled doctrine of the supreme court of the United States is, that no state insolvent laws can discharge the obligations of any contract made in the state, except such contracts as are made between citizens of that state. This was the decision in the case of Ogden v. Saunders, 12 Wheat. [25 U. S.] 213, which was subsequently affirmed in Boyle v. Zacharie, 6 Pet. [31 U. S.] 348. These decisions have been repeatedly acted upon in this commonwealth. Braynard v. Marshall, 8 Pick. 194; Betts v. Bagley, 12 Pick. 578; and Agnew v. Platt, 15 Pick.

417. This objection, then, cannot prevail. Indeed, it does not appear by the trustee's answer, that Foster did ever obtain his discharge under the insolvent act. Then, is the attachment dissolved by the insolvent act of 1838? It may be admitted, that if this had been an attachment by process issued from the state court, it could have been dissolved by the fifth section of the insolvent act of 1838. But the question is a very different one in the case of process, which issued from a court of the United States. By the acts of congress, the state process, existing at the time when those acts were passed, was adopted, with all the rights and incidents then attaching thereto. But no subsequent repeal or change of such process by the state legislature, is, or can proprio vigore be of any validity or effect in the courts of the United States. On the contrary, the process and the incidents thereto, and the rights growing out of the same, remain the same in the courts of the United States, as they were at the beginning, notwithstanding any subsequent state legislation, unless, indeed, under the authority of some act of congress, the courts of the United States have adopted such state legislation, or it has been directly adopted by an act of congress. This was fully settled in the cases of Wayman v. Southard, 10 Wheat. [23 U. S.] 1; U. S. Bank v. Halstead, Id., 51; Beers v. Houghton, 9 Pet. [34 U. S.] 332; and U. S. v. Knight. 14 Pet. [39 U. S.] 301. So that there is no ground to assert that the insolvent act of 1838 has dissolved the present attachment, since that act has never been adopted by congress, nor received any sanction from this court, even if it had authority to adopt it, which I am far from supposing.

The case, then, is reduced to the simple consideration of the allowances to be made to the trustee. The first allowance claimed is for costs and expenses, incurred by the trustee in certain suits, which he commenced in the state courts, under the local attachments in those suits, which had been assigned to him by Foster, upon the general assignment. He failed in those suits, for the very reason that the assignment was adjudged to be a nullity. And certainly, there is no ground to assert, that against the plaintiff he has any claim to be remunerated out of the property, attached by him in the present suit, to reimburse himself for expenses, which, so far as the plaintiff is concerned, were tortious and injurious to him. It has been said that the assignment, although void as to debts due to other creditors, was good at the common law, as to other debts due to the trustee. But this was not made a ground of defence in the state court; and this court has no right to overhaul or re-examine the judgment rendered in those suits by the state court. It must here be treated as valid and conclusive against all right in the trustee to maintain it.

No objection is made by the defendant to the allowance of the costs and expenses incurred by the trustee under, or in virtue of the general assignment, before the plaintiff's attachment. It does not appear to me that he has a right to any costs or expenses, subsequently incurred under or in virtue thereof. They were not authorized by the plaintiff; and it does not follow that they were for his benefit. But if they were, I am not aware that after notice of the attachment, the trustee had any right to incur any costs or expenses on account of the plaintiff.

As to the supposed debt, due to the plaintiff on a note, stated in the answer, it is admitted in the evidence, that it is a mere indemnity or security for an outstanding claim against him, which may have been paid. And it is now admitted at the bar, that this claim has been paid; and therefore the note has ceased to have any farther validity. In point of law the debt is extinguished. Carter must therefore be adjudged as trustee for the full sum collected by him and in his hands at the time of the plaintiff's attachment, viz.: for the sum of $1127, deducting only the costs and expenses incurred by him in the collection before said attachment, and such a sum, as he is entitled to be allowed in the present suit for his costs as trustee.

---

SPRINGER (MATHEWS v.). See Case No. 9,277.

SPRINGFIELD FIRE & MARINE INS. CO. (LUCE v.). See Case No. 8,589.

SPRINGFIELD FIRE INS. CO. (CATLIN v.). See Case No. 2,522.

SPRINGPORT (AVERY v.). See Case No. 676.

SPROGELL (KROUSE v.). See Case No. 7,940.