Wheeler, J.
The principal question presented for our consideration by the assignment of errors is whether the discharge in bankruptcy pleaded by the defendant is good and effectual in bar of the plaintiffs’ action. For the plaintiffs it is insisted that it is not, because the contracts sued on were made in another State and between citizens of another State; and that to hold the remedy extinguished by a discharge under the bankrupt law of this State would be to give that law an effect violative of the prohibitory clause in the Constitution of the United States, which declares that “no State shall pass any law impairing the obligation of contracts.” (Const. U. S., art 1, sec. 19.)
The constitutionality of State insolvent laws discharging the debtor from-foreign as well as domestic contracts does not appear to have been questioned previous to the decision of the Supreme Court of the United States in the case of Sturgess v. Crowninshield. (4 Wheat. R., 122; 9 Johns. R., 325; 6 Johns. Ch. R., 52; Story Confl. Laws, sec. 348.) That case led to a very elaborate and thorough examination of the power of the States to pass bankrupt or insolvent laws, as affected by the constitutional prohibition of the passage by the States of laws impairing the obligation of contracts. The defendant was sued in Massachusetts, in the United States Circuit Court, upon two promissory notes given in March, 1811, and he pleaded his discharge under an insolvent law of New York passed in April, 1811. The act was retrospective, and discharged the debtor from all his pre-existing debts and from all liability by reason of them. It was decided (Chief Justice Marshall delivering the opinion of the court) that “ a State has authority to pass a bankrupt law, provided such law does not impair the obligation of contracts within the meaning of the Constitution, and provided that"there be no act of Congress in force to establish a uniform system of bankruptcy conflicting with such law; ” and that the insolvent law of New York pleaded in the case, so far as it is attempted to dis•charge contracts entered into antecedent to its date, was a law impair *178 ing the obligation of contracts, and consequently the discharge of the defendant under it was no bar to the suit. (4 Wheat. R., 122 ; 4 U. S. Cond., R., 409, 422.)
The next case in which this question was considered by the Supreme Court was the case of McMillan v. McNeill, (4 Wheat., 209,) decided at the same term, February Term, 1819. McMillan, residing in Charleston, South Carolina, anti transacting business there as a partner of the house of Sloane & McMillan, of' Liverpool, on the 8th of October and 9th of November, 1811, imported goods, on which lie gave bonds at the custom-house, with McNeill as security. The bonds were payable on the 8th of April and 9th of May, 1812, and were paid,, after suit and judgment, by McNeill on the 23d day of August and 23d of September, 1813. Some timeafterwards McMillan removed to New Orleans, where, on the 23d of August, 1813, the District Court of the State of Louisiana, having previously taken into consideration his petition, under a law of the State of Louisiana passed 1808, adjudged to him a full and absolute discharge from all debts and demands of whatever nature due and owing by him previous to the date of the commencement of that proceeding, which was on the 12th day of August, 1815. The house of Sloane & McMillan, of Liverpool, having failed, a commission of bankruptcy issued against botli the parties in England, on the 28th of September, 1812, and on the 28th of November, 1812, they both obtained certificates of discharge, signed by the commissioners and confirmed by the-Lord Chancellor of Great Britain, according to the bankrupt laws of England. On the 1st day of July, 1817, suit was instituted by McNeill, a citizen of South Carolina, against McMillan, then a citizen of Louisiana, to recover the amount paid by the former for the latter under tiie custom-house bonds in South Carolina. The defendant pleaded in bar tils certificates under the Louisiana and English bankrupt Jaws. The plaintiff demurred to the plea, and the court susiained the demurrer, and gave judgment for the plaintiff; and the-Supreme Court, Chief Justice Marshall delivering the opinion of the court, affirmed the judgment, the chief justice saying that in the opinion of the court, “ this case was not distinguishable in principle from the case of Sturgess v. Crowninshield.”
Since these decisions the subject has been much discussed, both in the Federal and State courts, and the result of the decisions is thus succinctly stated by Chancellor Kent in the first volume of his Commentaries, pp. 421, 422, 5 edit, r “ As the decisions now stand, the debt must have been contracted after the passing of the act, and the debt must have been contracted within the State and between citizens of the State, or else, a discharge will not extinguish the remedy against the future property of the debtor.” The result of the decisions is also stated by Judge Story (3 Comm. Const. U. S.) to be, that State insolvent laws lawfully apply, 1st, to all contracts made within the State ; 2d, they do not apply to contracts made within the State, between a citizen of the State and a. citizen of another State; 3d, nor to contracts not made within the State; and the contracts so protected are equally so from prospective as well as retrospective legislation. The principle of the decisions, as stated bythe.se distinguished jurists, who were eminently qualified by their judicial experience and learning" to form a just conclusion, and the case of McMillan v. McNeill, which is in, point, seem to be decisive of the present case in favor of the plaintiff.
But our attention has been especially invited by counsel for the defendant, to the opinion of the court by Mr. Justice Johnson in the case of Ogden v. Saunders, (12 Wheat. R., 213.) and to the case of Boyle v. Zacharie & Turner, (6 Pet., 348, 643,) in which Chief Justice Marshall said the principles established in the opinion of Mr. Justice Johnson, in Ogden v. Saunders, were to be considered “the law of the court.” And Mr. Justice Story, in delivering the opinion of the court, said: “The ultimate opinion, delivered by Mr. Justice-Johnson in the case of Ogden v. Saunders, (12 Wheat., 213, 358,) was *179 concurred in and adopted by tile three judges, who were in the minority upon the general question of the constitutionality of State insolvent laws, so largely discussed in that ease. It is proper to make this remark, in order to remove an erroneous impression of the bar, that it was his single opinion and not that of three other judges who concurred in this judgment. So far, then, as decisions upon State insolvent laws have been made by this court, they are to be deemed final and conclusive.”
In reference to these cases it is insisted that the result of the decisions is not stated with perfect accuracy in the texts of Kent and Story which we have quoted; and it is supposed that the case of Ogden v. Saunders must have been overlooked or its principles misconceived by them; that it maintains a doctrine more favorable to the defendant, and being subsequent in time to the case of McMillan v. McNeill, that it ought to furnish the rule of decision in the present case. Few cases have elicited a more thorough investigation or more elaborate and able discussions than the case of Ogden v. Saunders. Among those who participated in these discussions there were those who have been and will doubtless ever continue to he ranked among the most distinguished jurists and statesmen whose names adorn the history of the bench and bar in this country. And it would indeed be remarkable if Chancellor Kent, and especially if Mr. Justice Story, who himself participated in the decision, should have overlooked or misconceived the principle of this very interesting and ably contested ease. But a brief statement of the case will show that the principle has not been misconceived or ids authority disregarded.
Saunders, a citizen of Kentucky, instituted an action in the District Court of the United States for the district of Louisiana against Ogden, then a citizen of Louisiana, upon certain bills of exchange drawn by Jordan, of Lexington, in the State of Kentucky, upon Ogden in the city of New York, he being then a citizen of the State of New York. The bills were accepted by Ogden at the city of New York, and were protested for non-payment. The defendant, Ogden, was afterwards discharged as an insolvent debtor under the insolvent laws of that State. The defendant pleaded this discharge in bar of the action. The jury by a special verdict found the facts of the drawing and acceptance of the bills,'and the discharge under the insolvent laws of New York. Upon this verdict the District Court gave judgment for the plaintiff, and the Supreme Court affirmed the judgment. In the ultimate opinion of the court by Mr. Justice Johnson, lie thus' states his conclusions upon the several questions considered and discussed in the opinion : “The propositions which I have endeavored to maintain in the opinion which I have delivered, are these :
“1. That the power given to the United States to pass bankrupt laws is not exclusive.
“2. That the fair and ordinary exercise of that power by the States does not necessarily involve a violation of the obligation of contracts, multo fortiori of posterior contracts.
“ 3. But where in the exercise of that power the States pass beyond their own limits and the rights of their own citizens, and act upon the rights of citizens of other States, there arises a conflict of sovereign power, and a collision with the judicial powers granted to the United States, which renders the exercise of such a power incompatible with the rights of other States and witli the Constitution of the United States.”
These propositions must be regarded as comprehending the entire rulings in the ease as they were understood by the judge by whom they were announced. Nothing more could have been intended by Chief Justice Marshall and Mr. Justice Story in their observations respecting this decision in the subsequent case of Boyle v. Zacharie; and there certainly is nothing in these propositions or in the decision of the questions necessarily arising iii the case inconsistent with the texts of Kent and Story. So far as the decision of the court upon the facts of the case can be held to extend, it is in entire harmony with *180 and is an authority for the propositions stated by them as the-result of the decision.
But in a recent case, the case of Cook v. Moffat et al., (5 How. R., 295,) the Supreme Court have taken the same view of their previous decisions as that taken by Chancellor Kent and Judge Story in their commentaries, and have put finally at rest the question as to the power of State bankrupt or insolvent laws to discharge from contracts made in other States with citizens of other States. The material facts of the case are thus briefly stated by Mr. Justice Grier: ‘‘Moffat & Curtis, merchants in New York, sold goods to Cook, who resided in Baltimore. On a settlement of their accounts, Cook transmitted his notes to iris attorney in New York, who delivered them to the defendants in error, (Moffat & Curtis.) After the note fell due Cook applied for and obtained the benefit of the insolvent laws of Maryland. By these laws the debtor, on surrender of his property, is discharged not only from imprisonment, but from his previous debts.”
Moffat & Curtis brought suit against Cook in the Circuit Court of the United States for the District of Maryland. The defendant pleaded his discharge, under the insolvent laws of Maryland. The Circuit Court gave judgment for the plaintiffs, and the Supreme Court, at the January Term, 1847, affirmed the judgment. The court were unanimous in the affirmance of the judgment of the'"Circuit Court, but Chief Justice Taney, who had given the judgment in that court, appears to have rested his concurrence in the judgment of the Supreme Court solely on the ground of the former decisions and a determination of a majority of the judges not to consider the question as altogether an open one. He had felt bound, (he said,) while sitting in an inferior tribunal, to follow.the decisions of the Supreme Court, though he could not assent to the correctness of the reasoning upon which they were founded. In delivering the opinion of the court, Mr. Justice Grier said : “The only question, then, to he decided at present is whether the bankrupt law of Maryland can operate to discharge the plaintiff in error from a contract made by him in New York with citizens of that State. In support of the - affirmative of that proposition, it has been contended—
“1st. That the State of Maryland having power to enact a bankrupt law, it follows, as a necessary consequence, that such law must control the decisions of her own forums.
“2d. That the courts of the-United States are as much bound to administer the laws of each State as its own courts.”
“It lias also been contended that the case of Ogden v. Saunders, while it admits the first proposition, denies the second, and that this court ought to reconsider the whole subject and establish it on principles more consistent. But we are of opinion that the case of Ogden v. Saunders is not subject to the imputation of establishing such an anomalous doctrine, although such an inference might be drawn from some remarks of the learned judge who delivered the opinion of the court in that case. The question whether a State court would he justifiable in giving-effect lo a bankrupt discharge which the courts of the United States would declare invalid was not before the court, ami was therefore not decided. Nor lias such a decision ever been made by this court. The Constitution of the United States is the supreme law of the land, and binds every forum, yvhelher it derives ils authority from a State or from the United States. When this court lias declared State legislation to be in conflict with the Constitution of the United States, and therefore void, the State tribunals are bound to conform to such decision. A bankrupt law which comes within tliis category, cannot be pleaded as a discharge, even in the forums of the State which enacted it. * * * * * * * *
“When, in the case of Sturges v. Crowinsliield, this court decided ‘that a State has authority to pass a bankrupt law, provided there be no act of Congress in force to establish a uniform system of bankruptcy,’ it was nevertheless considered to be subject to the further condition ‘that such law should, not impair the obligation of contracts within the meaning of the Constitution *181 of the United States.’ (Art. 1, sec. 10.) It followed as a corollary from this modification and restraint of the power of the States to pass such laws that they could have no effect upon contracts made before their enactment or beyond their territory. Hence, at the same term the court unanimously decided, in McMillan v. McNeill, that a contract made in South Carolina-was not affected by a discharge in Louisiana, under a law made antecedently to the contract, although the suit was brought in the Circuit Court of the United States for Louisiana. That case was precisely similar in all respects to the one before us.
Rote 65. — Shelton v. Wade, 14 T., 52.
Referring to the ease of Ogden v. Saunders, the court say: “A majority of the court there decided :
1st. “That a bankrupt or insolvent law of any State which discharges the person of the debtor and his future acquisitions is not a law impairing the obligation of contracts so far as it respects debts contracted subsequent to the passage of such law.
2d. “That a certificate of discharge under such a law cannot be pleaded in bar of an action brought by a citizen of another State.”
The court say they do not deem it necessary to vindicate the consistency of the propositions ruled in that case, with the reasons on which they appear to have been founded; but they say “the members of the court who were in the minority in the final decision of it fully assented to the correctness of McMillan v. McNeill, which rules the present case.” They refer to the ease of Boyle v. Zacharie, and say: “So far as respects the point now before us, this court appear to have always been unanimous.” And, “ so far at least as the present case is concerned, the court do not think it necessary or prudent to depart from the safe maxim of stare decisis.'”
The novelty of this interesting question in this court, its importance, and the consideration that it is a question peculiarly subject to the authority of the decisions of the Supreme Court of the United States, have seemed to me to render proper so full a reference to the decisions of that court. Since the question is thus settled by authority, it is unnecessary, and it would indeed be presumptuous in me to enter anew into the reasoning upon the subject. Whatever diversity of opinion may have been entertained upon various questions connected with the present, the decisions of the court appear to have been uniform in holding that a discharge under a State bankrupt or insolvent law cannot be successfully pleaded in bar of an action on a foreign contract, or one made in another State.
The petition in this ease alleges that the contracts upon which the suit is brought were made "at Mobile, in the State of Alabama.” The bills, which are made part of the petition, appear upon their face to have been drawn upon the. firm of “Rhea, Sykes & Co.. Mobile, Alabama.” And it is alleged that they were accepted “at Mobile aforesaid;” that (lie plaintiffs are “merchants in the city of Mobileand that the defendant is one of (he acceptors. That these contracts, then, were not made in this State, or to be performed here, but that they arc foreign contracts, made and to be performed in the State of Alabama, is positively'averred. And although it is not directly averred that the parties to the contracts were at the time citizens of Alabama, yet the amendments of the petition, when taken together, would seem, with reasonable certainty, to establish that fact. Having been made in Alabama, the contracts were not affected by the discharge of the defendant under the bankrupt law of this State. Consequently that discharge was not a good plea in bar of the action, and the court erred in overruling the plaintiff’s exception to the plea.
In the opinion of the court the judgment must have been reversed on other grounds of error assigned. But as that considered must be conclusive against the defense, to which they also relate, their consideration does not become necessary, and would be a useless consumption of time. We are. of opinion that the judgment be reversed and the cause remanded for furl her proceedings.
Judgment reversed.