WILSON *vs.* MATTHEWS, FINLEY & CO.

[BILL IN EQUITY BY FOREIGN CREDITOR TO ATTACH BANK-STOCK OF FOREIGN INSOLVENT DEBTOR.]

1. *Constitutionality of Louisiana insolvent laws.*—The insolvent laws of Louisiana, so far as they operate to discharge the person and after-acquired property of the debtor from liability on any contract made since their enactment

with a resident citizen of that State, are not violative of any provision of the constitution of the United States.

2. *Construction of Louisiana insolvent laws, and effect of discharge under them.* A surrender under the insolvent laws of Louisiana, although it may not affect the rights of a foreign attaching creditor who does nothing to forfeit his territorial immunity, passes to the assignee, or syndic, all the personal property owned by the debtor at the time of the application, whether in that State or elsewhere ; the discharge, which relates back to the time of the surrender, releases the person of the debtor, with all his subsequent acquisitions of property, from liability for existing debts due to resident creditors ; and any resident creditor, who proved his debt, and otherwise participated actively in the proceedings, is precluded from filing a bill in equity in this State, to attach bank-stock standing in the debtor's name, the certificates of which were surrendered to the syndic, but which, under the rules of the bank, could only be assigned by transfer on its books.

APPEAL from the Chancery Court of Madison.
Heard before the Hon. JOHN FOSTER.

THIS bill was filed by Hugh Wilson, and sought to subject fifty shares of the capital stock of the Northern Bank of Alabama, at Huntsville, which was standing in the name of Matthews, Finley & Co., to the payment of a debt of $6,500 due to him from them.  The plaintiff's letter to his agents in Huntsville, instructing them to have the bill filed, was dated the 5th December, 1854; and the bill was filed on the 14th December.  It alleged, that plaintiff and the several partners composing the firm of Matthews, Finley & Co. were resident citizens of Louisiana; that plaintiff's debt consisted of a balance due on deposit account, as evidenced by the defendants' written acknowledgment, dated 11th November, 1854, which was protested for non-payment on the 5th December, 1854; that said defendants had wholly failed in business, and had not sufficient property or effects of any kind, belonging to the firm or to the individual partners, within the State of Louisiana, whereby to satisfy plaintiff's said debt.

The defendants answered the bill, setting up their discharge under the insolvent laws of Louisiana, a copy of which, with all the proceedings therewith connected, was made an exhibit to the answer.  The transcript of these proceedings, as set out in the exhibit, showed that the

debtors' petition for the benefit of the insolvent laws was filed in court on the 6th December, 1854; that the plaintiff's debt was included in their schedule of liabilities, and "$5,000 stock in Alabama" in their schedule of assets; that on the same day, on the petition of some of the creditors, including the plaintiff, Lewis A. Finley, one of the partners of the firm of Matthews, Finley & Co., was appointed provisional syndic; that said Finley was afterwards elected sole syndic by a vote of the creditors, and clothed with discretionary powers in settling up the business of the firm; that plaintiff, in voting for the sole syndic, "reserved all legal rights, liens and privileges, which he may have acquired over any particular property, funds, or assets of any kind, belonging to the said insolvents;" that plaintiff became surety for said Finley, on his bond as provisional syndic; and that the debtors were discharged, by a decree of the court, on the 20th February, 1855.

It was admitted, by agreement of counsel, that both plaintiff and defendants were resident citizens of Louisiana at the time of the surrender and prior thereto, and so continued; that the stock sought to be subjected by this bill was the "$5,000 stock in Alabama" included in the debtors' schedule, the certificates of which were deposited in the hands of the provisional syndic on the 6th December, 1854, and were still in his possession as syndic; that plaintiff was included in the first "tableau of distribution," which was made by the syndic on the 4th April, 1855; but that he had never drawn his dividend; and that the assignment was *bona fide* and voluntary.

On these facts, the chancellor dismissed the bill, on final hearing on bill, answer and proof; and his decree is now assigned as error.

WALKER, CABANISS & BRICKELL, for appellant.—1. The Louisiana law does not discharge the debt, but simply operates to relieve the person and property of the debtor from seizure. It only affects the remedy, which is always local. Where there is not any extinguishment, positive

or virtual, of all the rights and remedies of the creditor, the contract is not deemed to be extinguished, but may be enforced in other countries.—Story on Conflict of Laws, § 339. An insolvent act, which only absolves the person of the debtor from imprisonment, but not his future property, is not to be deemed a discharge from the contract; and its operation is purely intra-territorial.—*Ib.* So far as they authorize a discharge of the person, estate, or effects of the insolvent, they are merely local, and can have no authority here: they are addressed to the *lex fori.* This suit is to be decided by the laws of Alabama; and a discharge of the person or the property of the debtor in another State, which leaves the contract in full force, has no effect upon the suit. When the right exists, the remedy is to be pursued according to the *lex fori* where the suit is brought.—3 Mason, 88. The distinction between the obligation of contracts, and the mode of applying the remedies thereto, is well established: the former is universally recognized according to the law of the place where the contract is made; the latter is bounded by the territorial limits, and is not of efficiency elsewhere. 5 Mason, 378. An insolvent law operates on the remedy of a contract, and not on the contract itself.—Williams on Personal Property, m. p. 133, note 1; *ib.* 210.

The principle is not at all affected by the fact, that both the plaintiff and the defendants were citizens of Louisiana at the time of the surrender.—5 Mason, 379. Discharges under such laws have no effect without or beyond the territory of the State where they were obtained, or of any other State than that in which the proceedings took place, notwithstanding the contract, on which the discharge was intended to operate, was entered into, and was to be performed, in the State in which the discharge was granted.—12 Wheaton, 358; 8 Pick. 194. Generally speaking, the law of the place where a contract is made is the law by which the contract is to be expounded. But the right of priority forms no part of the contract itself: it is extrinsic, and rather a personal privilege, dependent on the laws of the place where the property lies, and where the court which decides the cause sits.—Harrison

v. Sterry, 5 Cranch, 298, 302. The English doctrine, that the bankrupt law of the country of the contract is paramount in disposing of the rights of the bankrupt, is not recognized by a court in the United States.—12 Wheaton, 361. State insolvent laws, which discharge only the body from imprisonment, or the property from seizure, do not thereby discharge the contract. They do not interfere at all with the debt due, the contract itself, or its obligations, but merely the remedy on it, or the form of legal process; and thus they should govern, in that respect, no foreign forums, but merely its own courts, as the local and territorial tribunal who issue the precept or process. If they sought to do more, they would be unconstitutional.—5 How. (U. S.) 316. All the cases in which effect has been given to the insolvent laws of a State, as against a citizen of the same State, were cases in which the law, by its terms, not only exempted the person or property of the debtor from seizure, but discharged the contract.—16 Pick. 341.

2. Even if the law of Louisiana operated a discharge of the debt, it can have no extra-territorial operation: it would have effect only in Louisiana, both as to the debt itself, and the property there situated. As against creditors, personal property has locality; and the *lex loci rei sitæ* prevails over the law of the domicile, with regard to the rule of preferences in the case of insolvent estates.—2 Kent's Com. (6th ed.) top pages 406–8, or (8th ed.) 504–6. An assignment abroad, by act of law, has no legal operation *extra territorium*, as against the claims of their own citizens. 6 Binney, 353; 13 Mass. 146; 4 Pick. R. 265; 6 Pick. R. 286. These authorities expressly overrule the case in 4th Johns. Ch. 460; and Chancellor Kent himself, whose judgment it is, admits that case not to be law.—2 Kent's Com. (8th ed.) 503–4. These cases proceed upon the maxim, *extra territorium jus dicenti impune non paretur*. Story on Conflict of Laws, § 539. It is true that some nations, in maintaining suits *in personam*, do indirectly attempt by their judgments and decrees to bind property situate in other countries; but it is always with the reserve, that it binds the person only in their own courts in regard to such property.—*Ib.* § 543. If a court of

chancery, in England, should compel a bankrupt, by its decree, to convey his personal and real estate situate in foreign countries to the assignee under the commission, (as it was once thought they might do, though the doctrine is now repudiated,) such a decree would not operate to transfer the property so as to affect the rights of creditors, or the regular operation of the law of the *loci rei sitæ.—Ib.* §§ 543, 550–56; 23 Wendell, 90–100; 3 Wendell, 538, 562–66; 2 Kent's Com. (6th ed.) 407, note *d,* or (8th edition) 506, note *d.*

This general principle is not at all affected by the fact, that both the creditor and debtor were, when the debt was created, and now are, citizens of Louisiana.—3 Wend. 566. The only question is, whether the assignment wrought a change of property; and being an assignment by operation of law, whether it can affect property beyond the reach of that law. The true principle is, that in whatever way the party honestly acquires title to the insolvent's property, situate in a foreign State, his citizenship has nothing to do with the question.—23 Wendell, 95. The courts will not suffer assignments, made by operation of law, to stand on the footing of the *lex loci contractus;* but only on that of the *lex fori,* from the operation of which all persons, whether citizens or strangers, are exempt the moment they cross the State boundary.—*Ib.* There is a marked distinction, between a voluntary conveyance of property by the owner, and a conveyance by operation of law in cases of bankruptcy. In place of a voluntary conveyance, all that the legislature of a country can do, when justice requires it, is to assume the disposition of it *in invitum.* But these statutable conveyances cannot operate upon any subject that is not within their territory. A voluntary conveyance has no relation to place; a statutable conveyance, on the contrary, has the strictest relation to place. The law which compels an assignment, has no extra-territorial force: it is a dead letter in a foreign country. It is of the nature of the *lex fori* that it should be strictly confined to its own territory. It respects the remedy merely; and being thus withdrawn from the foreign country, though it profess to operate on

personal property which has found its way there, such property is left, in effect, like land, absolutely to the *lex loci rei sitæ.*—23 Wendell, 99; Story on Conflict of Laws, § 383; Williams on Personal Property, 209, note 1.

The case of Black v. Zacharie, 3 How. (U. S.) 483, has no application to a case like this. That was an assignment by contract between the parties; here, it is a transfer by operation of a municipal law. The obligation of contracts is acknowledged everywhere; and personal property, in respect to the control of the owner, has no locality; but, in respect to the control which the law can exercise over it, locality is everything.—3 Wendell, 566; 23 Wendell, 95.

The case of Smith v. Clay, 3 Peters, 411, is not an authority against the correctness of the principles above contended for; differing as it does, in several important particulars, from this case. That suit was brought in a Louisiana court, and against the person of the debtor; and the only point decided was, that the plaintiff, a non-resident, had forfeited his territorial immunity by receiving a dividend on his debt. In this case, the creditor seeks his remedy in a foreign State, where the discharge has no effect; not against the person of the debtor, nor against his subsequently acquired property, but against property held by him at the time of his surrender, which, though included in his schedule of assets, was in its nature fixed and immovable, and could not be transferred without the formalities prescribed by the by-law of the bank. In that case, the creditor, by actually receiving his dividend, had lessened the amount distributable among the other creditors, and was estopped from assailing the insolvency. In this case, the creditor has done nothing, except to join in the petition for the appointment of a syndic, and become surety on the syndic's bond; which does not estop him from maintaining a foreign action on his debt.—1 Bacon's Abr. 689; Allan v. Phillips, 15 E. C. L. 269; 5 Grattan, 307; Norton v. Cook, 9 Conn. 314; 3 Selden, 507.

3. The transfer of the stock by the debtors under the Louisiana law did not operate a change of title. The

charter of the Northern Bank provides, that the shares of
stock "shall be assignable and transferrable according to
such rules as shall be instituted in that behalf by the by-
laws and ordinances of the bank, and transfer-books shall
be kept for that purpose; " and the 16th by-law provides,
that all transfers of stock shall be made by the owner
thereof, at the bank, in person or by proxy, and in the
presence of the president or cashier, and no stock can be
transferred until the certificate thereof is first surrendered.
The charter further provides, that the stockholders shall
be bound respectively for all the debts of the bank in pro-
portion to their stock therein.  A transfer, in any other
mode than that required by the by-law, would enable a
stockholder to substitute an insolvent person in lieu of
himself, and thus defeat the very object contemplated by
both the charter and the by-laws.—Angell & Ames on
Corporations, 514, et seq.

4. If the debt was discharged by the Louisiana laws, the
discharge ought to have been pleaded, like bankruptcy.
It is a personal plea, which the debtor may waive, and
which is waived if not pleaded.

J. W. CLAY, contra.—The record presents the naked
question, whether a voluntary surrender and assignment,
by citizens of Louisiana, of certificates of bank-stock in
Alabama, will carry the right and title to the stock to
the assignee for the benefit of the creditors generally, as
against a creditor who is also a citizen of Louisiana, who
had notice of the assignment, and expressly assented to
it, and who subsequently attaches the stock in Ala-
bama, to satisfy a debt contracted and payable in Louis-
iana.

1. Under the laws of Louisiana, the assignment vested
the title to the assets and property in the creditors gener-
ally, the instant it was accepted by the court.—Bullard &
C.'s Digest, 495, § 2; Schrœder v. Nicholson, 2 La. 345;
Morgan v. Creditors, 7 La. 62; Dwight v. Simon, 4 La.
Ann. 490.

2. The delivery of the certificates of stock to the syndic
operated a transfer of the title.  Stock is, in its nature,

incorporeal, and incapable of actual delivery; and, therefore, a symbolical delivery is sufficient to pass the title to it.—Angell & Ames on Corporations, 570, § 564, note 2; 16 Martin's La. Rep. 56, 19, 137; 1 Gallison, 323. The fact that the stock was in a foreign bank, can make no difference; since personal property has no locality, and the validity of its transfer or assignment depends on the law of the owner's domicile.—Story's Conflict of Laws, §§ 404, 383, 376; Angell on Assignments, 57; 4 T. R. 192; 1 H. Bla. 691; 4 John. Ch. 461; 19 Pick. 105; 8 Peters, 372; 2 How. (U. S.) 483. A compliance with the mode of transfer prescribed by the rules of the bank, was not essential to the validity of the assignment. The provisions of the charter, under which the rules were adopted, were intended for the protection of the bank, and not to interfere with the rights of stockholders to transfer their stock to third persons when the bank had no claim on them.—Angell & Ames on Corporations, § 354; 11 Wendell, 628; Duke v. Cahaba Manufacturing Co., 10 Ala. 89–90.

3. The assignment is admitted to have been honest and voluntary, and it comes within the legal definition of a voluntary assignment.—Dyson v. Brandt, 2 Cond. La. R. 10. After the assignment was accepted, an attaching creditor in Louisiana could not have held any of the property as against the creditors claiming under the assignment.—Babcock v. Malbie, 4 Cond. La. R. 185; Bullard & C.'s Digest, 495, § 2. The courts of Alabama, when invoked by a citizen of Louisiana, will give the same effect to the assignment that it has in Louisiana. Robinson v. Rapeley, 2 Stew. 102; 1 Bailey, 193; 2 Bail. 163; 4 T. R. 192; Story's Conflict of Laws, § 413; 13 Peters, 589; 20 John. 261; 12 Wheat. 213; 1 Penn. 117; 5 Mason, 174. Moreover, the plaintiff's active interference in the matter of the insolvency, as shown in the record, places him in such a position that, even if he were a non-resident, he would not be allowed to dispute the discharge, or to prefer a claim against or in opposition to the assignment.—Jones v. Horsey, 4 Md. 306; Hall v. Boardman, 14 N. H. 38; Brigham v. Henderson, 1 Cush.

430; Rogers v. Western Marine & Fire Ins. Co., 1 La. Ann. 161; Clay v. Smith, 3 Peters, 411.

STONE, J.—By the constitution of the United States, (Art. I, sec. 8, subd. 4,) congress has power to establish "uniform laws on the subject of bankruptcies throughout the United States." This power has been twice exercised since the federal government went into operation; but, in each instance, the statutes had but a brief existence. In the absence of general regulations on this subject, State legislatures have given attention to the condition of bankrupts and poor debtors; and the result is, that most, if not all, of the States composing this Union, have what are called *insolvent*, or *poor-debtors'* laws.

The provisions of these several State systems, and the measure of the relief which they afford to the debtor, are essentially variant. An extreme class in one direction proposes nothing more than a release of the *person* of the debtor from imprisonment, on his surrender of his effects for the benefit of the arresting creditor or creditors. The extreme class in the other direction proposes to grant relief almost as extensive as could be afforded by a general bankrupt law. Under this class, the insolvent is required to surrender all his effects for the benefit of all his creditors; and if the surrender be made in good faith, and the insolvent comply faithfully with the requirements of the statutes of his State, not only his person, but his future acquired property, will be exempt from seizure for any debt which the insolvent owed at the time of the surrender.

The Louisiana statutes, upon the effect of which we are required to pronounce in this case, are of the latter class; and we confine the principles hereafter asserted to statutes of this class.

The constitution of the United States (Art. I, sec. 10, subd. 1) takes away from the several States the right to pass any "law impairing the obligation of contracts." Under the two provisions of the constitution copied above, the constitutionality of State insolvent laws has been fiercely assailed. This question has been of,en con-

sidered, both in the supreme court of the United States, and in the highest appellate courts of many of the States. We do not propose to collate the numerous decisions that have been made on this question.

The case of Ogden v. Saunders, 12 Wheaton, 213, has been, ever since its announcement, a leading case on State insolvent laws. The supreme court of the United States have uniformly adhered to the principles there settled, and the State courts have generally adopted and acted on them. In that case, it was held, that the power given to the United States, to establish uniform laws on the subject of bankruptcies, is not exclusive of the right of the States to legislate on the same subject, except when the power is actually in exercise by congress, and the laws of the State are in conflict with the law of the United States; that a bankrupt or insolvent law of any State, *which discharges both the person of the debtor and his future acquisitions of property*, is not a law impairing the obligation of contracts, if such contract be made subsequent to the enactment of the statute, and between citizens of the State in which the discharge is prayed for and obtained; but, when such State laws assume to pass beyond the limits of the State by which they are enacted, and act upon the rights of citizens of other States, they are, to that extent, inoperative.

In Boyle v. Zacharie, 6 Peters, 348, this question came again before the supreme court of the United States; when Ch. J. Marshall announced, that the court would adhere to the principles settled in Ogden v. Saunders. See, also, Sturgis v. Crowninshield, 4 Wheaton, 122; McMullen v. McNeill, 4 Wheaton, 209; Beers v. Haughton, 9 Peters, 329; Suydam v. Broadnax, 14 Peters, 67; Cook v. Moffatt, 5 How. (S. C.) 295; Bank of Tennessee v. Horn, 17 How. 157; Golden v. Prince, 3 Wash. C. C. 313; Babcock v. Weston, 1 Gallison, 168; Springer v. Foster, 2 Story, 383; Bholen v. Cleveland, 5 Mason, 174; Campbell v. Claudius, Peters' C. C. 484.

See, also, Crane v. Martin, 4 Rich. 251; Hibler v. Hammond, 2 Strob. Law, 105; Frey v. Kirk, 4 Gill & Johns. 509; Gardiner v. Lee & Co.'s Bank, 11 Barbour,

S. C. 558; Raymond v. Merchant, 3 Cow. 147; Witt v. Follett, 2 Wendell, 457; Beers v. Rhea, 5 Texas, 349; Lathrop v. King, 8 Cush. 382; Potter v. Kerr, 1 Md. Ch. Dec. 275; Wheelock v. Leonard, 20 Penn. (St. Rep.) 440; Hempstead v. Reed, 6 Conn. 481; Hall v. Boardman, 14 N. H. 38; Very v. McHenry, 29 Maine, 206; 2 Kent's Com. (8th ed.) 479, 480.

The constitutionality of the Louisiana insolvent laws, which we are considering, was expressly recognized in the cases of Clay v. Smith, 3 Peters, 411; Bank of Tennessee v. Horn, 17 How. S. C. 157.

In this case, the insolvent laws of Louisiana were enacted before the contract was entered into. Matthews, Finley & Co., the debtors, and Wilson, their creditor, at the time the contract was made, were, and ever afterwards, so far as we are informed, continued to be, citizens of the State of Louisana. There is nothing on the face of the contract, or in the pleadings or proof, which shows that this contract was payable out of the State of Louisiana; and under these circumstances, the legal intendment is that it was to be performed in the State in which the parties were resident.

In the case of Bank of Tennessee v. Horn, 17 Howard, *supra*, it was held, that the *cessio bonorum* took effect from the time the surrender was made and accepted. Between the time when the insolvents made their surrender, and the time when they obtained their discharge, the Bank of Tennessee, a foreign creditor, obtained a judgment against the insolvents, and levied on and sold real property which had been surrendered by the insolvents. The syndic subsequently sold the same property, and the contest arose between the purchasers 'at the two sales. The purchaser from the syndic recovered.

The authority last cited is only important, as showing *when* the title of the syndic accrues, and that that title will prevail over a subsequent attachment in the same State by a foreign creditor.

[2.] The principles above asserted are fatal to the claim of Wilson, the attaching creditor, unless there are circumstances in this case which take it out of their opera-

tion. The grounds relied on for this purpose are the following:

1. That the discharge under the Louisiana insolvent law did not and could not cancel the obligation of the contract.

2. That those laws have no extra-territorial operation; and hence Wilson, nothwithstanding the discharge, may sue for his debt in another State, if he find his debtors or any of their effects there.

3. That, under the same principle which denies to State insolvent laws any extra-territorial operation, the property here in controversy, which was not in the State of Louisiana, did not pass to the syndic.

4. That, admitting the general rule to be that personal property situated in another State will pass under a surrender, such as was made in this case, this property did not pass: 1st, because of its peculiar nature, being bank-stock and immovable; 2d, because of the formalities necessary to effect its transfer.

We propose to consider these questions in the order in which they are stated.

1. We concede the proposition, that the discharge under the Louisiana statutes did not and could not cancel the obligations of the contract. No law enacted by a State can do this.—See Ogden v. Saunders, *supra*. As between these parties, however, circumstanced as they were, it took away from it all that was available. The surrender divested the insolvents of all the property they then owned, and vested the same in their creditors, of whom Wilson was one. The discharge had the effect of freeing the person of the insolvents, and their future acquisitions, from seizure for debts existing at the time of the surrender. What, then, was left upon which a subsequent suit could operate?

In the case of Clay v. Smith, 3 Peters, 411, a former discharge under the Louisiana insolvent laws was pleaded in bar of the action. The bar was held good and sufficient, and the plaintiff was not permitted to recover a common judgment. To the same effect is Crane v. Martin, 4 Rich. Law, 251, and authorities there cited; see, also, authorities cited to the next point.

Wilson v. Matthews, Finley & Co.

Under these authorities, if Wilson had subsequently sued in Louisiana on this demand, the discharge of the insolvents would have afforded them a full defense.

2. If, after the discharge, Matthews & Finley should remove to another State, or should subsequently acquire property in another State, and Wilson should then institute proceedings in such other State on this debt to recover a common judgment, or to subject the after-acquired property, this will present a different question, on which the authorities are not in harmony. The majority of the cases hold, that a discharge, obtained in one State, from a contract entered into in that State, between persons who reside there, is pleadable to a suit on the same contract, afterwards commenced in another State; in other words, that the discharge has the same effect in every other State, as it has in the State where it is ordered. See Wheelock v. Leonard, 20 Penn. State Reports, 440; Hempstead v. Reed, 6 Conn. 481; Pugh v. Bussell, 2 Blackf. 366; Gardiner v. Lee & Co.'s Bank, 11 Barb. S. C. 558; Hall v. Boardman, 14 N. H. 38; Parsons' Mer. Law, 316; May v. Breed, 7 Cush. 15; Bholen v. Cleveland, 5 Mason, 174; Very v. McHenry, 29 Maine, 206; Baker v. Wheaton, 5 Mass. 509; Harris v. Mandeville, 2 Dal. 256; Williams v. Guignard, 2 How. (Miss.) 722; Springer v. Foster, 2 Story, 383; Poe v. Lientard, 5 Md. 1.

Against this view are the following cases: Babcock v. Weston, 1 Gallison, 168; Reimsdyke v. Kane, 1 Gallison, 371; Campbell v. Claudius, Pet. C. C. 484; Titus v. Hobart, 5 Mason, 378; Holmes v. Remsen, 20 Johns. 229; Agnew v. Platt, 15 Pick. 417.

We do not deem it necessary to decide this question, as it is not the case made by this record. Another question arises in this connection, which we reserve for after consideration.

In a limited sense, insolvent laws have no extra-territorial operation. Creditors, who are not citizens of the State by which they are enacted, are not, as a general rule, bound by them. Unless they do some act by which they forfeit their territorial immunity, they may sue, notwithstanding the discharge; or they may attach the property of the

insolvent found in another State, and their liens will prevail over the claim of the assignee in insolvency.—Harrison v. Sterry, 5 Cranch, 289; Oliver v. Townes, 2 Mart. La. N. S. 93; The Watchman, Ware, 232; Frey v. Kirk, 4 Gill & Johns. 509; Evans v. Sprigg, 2 Md. 459; Woodhull v. Wagner, 1 Baldwin's Rep. 296; Cook v. Moffatt, 7 How. S. C. 295; Bancher v. Fisk, 33 Maine, 316; Blackman v. Green, 24 Verm. 17; Ilsby v. Merriam, 7 Cush. 242; Savage v. Marsh, 10 Metc. 594; Beers v. Smith, 5 Texas, 349; Poe v. Lientard, 5 Md. 1; Potter v. Kerr, 1 Md. Ch. Dec. 275; Tibbets v. Pickering, 5 Cush. 84; Palmer v. Goodwin, 32 Maine, 535.

It is also probable, that lands situated in another State would be governed by the *lex rei sitæ*, and would not pass by the assignment. A resident attaching creditor, however, stands in a category different from a foreign attaching creditor, as we shall presently show.

3. It is not true, as a universal proposition, that personal property, situated in another State, does not pass to the assignee under a surrender in insolvency. As against purchasers for value, and foreign creditors, who seize such property by foreign attachment, we admit it does not pass to the assignee or syndic.—See authorities *supra*. Beyond this, however, we do not concede the invalidity of the transfer.

In Abraham v. Plestoro, 3 Wend. 538, the court of errors of New York held, that a foreign decree in bankruptcy did not transfer personal property which was situated in New York, or confer on the assignee any right whatever to sue for or recover the property. That decision was made by the senate of New York, and was opposed to the opinion of the late Wm. L. Marcy and Chancellor Walworth.—See 1 Paige, 236. We confess our decided preference of the views expressed by Chancellor Walworth and Judge Marcy.

The authority of the above case is, however, entirely disregarded, so far as it affects this case, by the late decision of Hooper v. Tuckerman, 3 Sandf. Sup. 311. In the case last cited, an insolvent had made a voluntary surrender of his effects under the insolvent laws of Massachu-

setts.   Part of his property was in the State of New York, in the possession of persons to whom the insolvent had assigned it by deed, which was fraudulent on its face, as against creditors.   The Massachusetts assignee sued in New York to recover this property, and the decision was in favor of his right to maintain the suit.

The case of Johnson v. Hunt, 23 Wend. 87, is entirely unlike the present.   In that case, the insolvent had made no effort to surrender his effects for the benefit of his creditors.   On the contrary, he had absconded, carrying with him a portion of his property.   After his departure, certain of his creditors, under a statute of that State, had his effects placed in the hands of an assignee for the benefit of his creditors.   Other creditors, who had not meddled in the insolvency, pursued the absconding debtor into Pennsylvania, and there, by attachment of his goods, secured their demands.   On their return to New York, they were sued by the assignee for the property they had thus secured in Pennsylvania.   The decision was adverse to the assignees.

In considering this case, Cowen, J., was greatly controlled by the decision of the court of errors in Abraham v. Plestoro, *supra.*   He also mentioned, as an important circumstance, the fact that vigilant creditors had pursued the absconding debtor into Pennsylvania, and there obtained from him a transfer of his property; and that they had thereby benefited the other creditors, in this, that by obtaining satisfaction of their demands from this source, they left a larger fund for the satisfaction of the other debts.

For the reason, however, that this case rests mainly on Abraham v. Plestoro, which was, as we think, materially explained and qualified by Hooper v. Tuckerman, we do not consider it a binding authority to the extent contended for by appellant.

Against this view, we think there is an overwhelming weight of authority.   In Hall v. Boardman, 14 N. H. 38, an insolvent had made a surrender of his effects in Massachusetts, for the benefit of his creditors.   Among his effects surrendered was a debt due him in New Hampshire.

The insolvent obtained his discharge in Massachusetts. At the time he petitioned for his discharge in Massachusetts, he owed a debt due by note to another citizen of Massachusetts, which was contracted in that State, and provable under the insolvency. Subsequently to the surrender, but before the discharge, this note passed into the hands of another person, who attached the money collected on the New Hampshire debt, which had been surrendered by the insolvent. The report does not inform us, but we presume this attaching creditor was a citizen of New Hampshire. The question presented was, whether this attaching creditor or the assignee was entitled to the money. The money was adjudged to the assignee.

In delivering the opinion of the court, Parker, Ch. J., said: "It was a debt provable under said act, founded on a contract made after the act went into operation, made within the Commonwealth, and due to a person resident there at the time to which the discharge has reference; and so, as set forth in section 7 of the act, liable to be discharged by the course of proceedings. The note was over-due at the time of the transfer, and the present holder takes it subject to every defense to which it was open at the time of the transfer. What would be a discharge, the laws of Massachusetts, the place of the contract, are to settle; and inasmuch as the discharge since obtained would have been a good defense to an action on the note there, it must have the same effect here."

To the same effect are Hooper v. Tuckerman, *supra;* Hoag v. Hunt, 1 Foster, 106; Story's Conflict of Laws, § 420; Milner v. Moreton, 6 Binney, 369; Blake v. Williams, 6 Pick. 286; Plestoro v. Abraham, 1 Paige, 236; Merrick's Estate, 5 Watts & Serg. 9.

Under these authorities, we hold, that a surrender of effects under a State insolvent law does confer on the assignee or syndic a right to recover personal property situated in another State; that this right will prevail over the insolvent and all others holding in his right, but will not prevail over the claims of foreign attaching creditors, or purchasers for value.

4. We do not think there is anything in the objection founded on the peculiar nature of this property. True, it is bank-stock, and, in its present form, not susceptible of removal to Louisiana. It is, nevertheless, personal property, and governed by the laws which control personal property.—Story's Confl. of Laws, § 364, note 2, on pp. 300, 1; Story's Confl. of Laws, § 383, note 2, on p. 315; note 1, on p. 316; Angell & Ames on Corp. 435-6, 459-60.

We can readily imagine many species of personal property, whose very nature forbids removal; and yet we do not suppose the validity of a surrender of such property could be made to hinge on a contingency such as this. Suppose, among the effects surrendered, there should be a debt due by a citizen of another State. This debt, *as an entity*, could not be removed. The evidence of it, if that evidence existed in the form of a written contract, might be delivered to the syndic, and might be in his possession in the State in which the surrender was made. Between *the debt*, however, and the *evidence* of it, there is a wide and well recognized difference.

Moreover, if the delivery of the *evidence* be the delivery of the *property*, that was done in this case; for the certificates of stock were placed in the hands of the syndic. In Howe v. Starkweather, 17 Mass. 240, it was held, that the delivery of the certificates is the delivery of the stock, because this is the only delivery which the nature of the property admits of.

Without committing ourselves to the authority of the case last cited, we are satisfied, that the assignment should prevail over the claim of Mr. Wilson. The syndic is not bound to carry the specific property into the State in which the surrender was made. He can make it available, by converting it into money.

Neither do we think there is anything in the objection, that the transfer of this stock was not made on the books of the bank. Such regulations are generally adopted for the benefit of the corporation, and do not prevent other modes of assignment which would be upheld in equity.

Duke v. Cahaba Navigation Co., 10 Ala. 82; Black v. Zacharie, 3 How. S. C. 483.

In announcing the principle last asserted, it is perhaps proper that we should say, that neither the charter of the Northern Bank, nor the by-law, is in the record. The point has, however, been argued as if it were presented, and we have felt it our duty to announce our opinion upon it. Any other course might invite an application for a further hearing on a more complete record.

We return to the consideration of the second ground urged, why this case does not fall within the influence of the general principle theretofore asserted. It will be remembered that the debt due from Matthews, Finley & Co. to Wilson, on which this attachment was sued out, was contracted in Louisiana, between citizens of Louisiana, and payable in that State; that the contract was made subsequent to the enactment of the Louisiana insolvent laws, and that all the parties resided there when the surrender was made and accepted. In Hibler v. Hammond, 2 Strob. Law, 105, the question of the effect of a discharge of an insolvent debtor, as against a resident creditor, was considered in the court of appeals of South Carolina. The court said : "Everything partakes of the nature of judicial proceedings. The commencement by petition; the notice to the creditors; their right to contest the discharge; the court to examine the matter of the petition; the administration of the oath, and the legal effect of the discharge upon all debts, either in barring them altogether, or postponing their collection, all show that this is a judicial proceeding. If it is, then the judgment of the court on that which was decided, is *res judicata*, and cannot again be called into judgment between the parties. Nor do I consider that the fact that the plaintiff did not appear, and that no issue was in fact made on the truth of the schedule, can vary the case." To the same effect is the case of Hall v. Boardman, 14 N. H. 38, cited *supra*.

Now in this case, we need not resort to legal intendments to bring Mr. Wilson before the court. He did appear, and participated actively in promotion of the objects

of the surrender and discharge. Without his participation and vote, we cannot know that the liberal policy which marked the deliberations of the creditors, would have been extended to the insolvents. He must be regarded as a party to the proceedings, and bound by the decrees rendered in that cause, as all other parties are bound by judgments to which they are parties. Among the points settled and adjudicated in that proceeding, was the result that Matthews, Finley & Co. were divested of all title to property which could pass under the surrender, and that the same was vested in their creditors. We have shown above that this bank-stock could pass under the surrender, and Mr. Wilson does not stand in a position which authorizes him to arrest it in its transit. The discharge, when granted, has relation to the time of the surrender, and binds the parties as of that time.

We take yet a further step in this case. If Mr. Wilson had been a non-resident of Louisiana, and primarily not bound by those proceedings, his acts of intermeddling and participation in promotion of the objects of the surrender, would have worked a forfeiture of his territorial immunity, and bound him to an observance of the decree. We are aware that an appearance to oppose the discharge of the insolvent has no such effect.—See Donnelly v. Corbett, 3 Selden, 500; Phillips v. Allan, 8 Barn. & Cress. 477; McCarty v. Gibson, 5 Grat. 307; Norton v. Cook, 9 Conn. 314. But Mr. Wilson did not oppose the discharge. On the contrary, all his acts were in furtherance of the common object. He recommended the provisional syndic, became his surety on his bond, voted for definitive syndic, and aided in clothing him with large discretionary powers. He proved his demand as a claim against the insolvents, and voted their absolute discharge from their debts, beyond the property surrendered.

The case of Clay v. Smith, 3 Pet. 411, is an authority on this point. Clay had obtained his discharge under the Louisiana insolvent laws. Smith, a creditor of his living in Kentucky, had a claim on Clay, which was contracted before the enactment of the Louisiana statute. Smith had thus two grounds of exemption from the effect of

Clay's discharge as an insolvent. He, however, proved his claim in the insolvency, and received a dividend. Smith afterwards sued on his claim, and these facts were pleaded in bar of the suit. The supreme court of the United States held the plea good. The court said, that by voluntarily making himself a party to the proceedings, he abandoned his territorial immunity.

In Jones v. Horsey, 4 Maryland Rep. 306, it was held, that the voluntary uniting by a foreign creditor in the recommendation of a trustee for an insolvent, is such an acquiescence in the insolvent laws of that State, as to place such creditor upon the same level with domestic creditors.

In Blackman v. Green, 24 Vermont, 17, this question again came up. It was contended that, under the authority of Clay v. Smith, the foreign creditor did not forfeit his territorial immunity, unless he accepted a dividend under the insolvency. The court ruled otherwise, and held that proving his demand made him a party to the proceedings.

So, in this case, if necessary, we would hold, that Mr. Wilson, by his acts, made himself a party to the proceedings, and bound himself to their observance.

There is yet another reason why we think Mr. Wilson should not be permitted to maintain this suit. The Louisiana insolvent laws contemplate perfect equality of benefits to all the creditors. The statutes are very just in all their appointments. Mr. Wilson has placed himself in position to receive his share of dividends, and at the same time is seeking to appropriate this entire fund to himself. If he succeed in this, on the ground that this fund does not pass by the assignment, we know no reason why he should not be permitted to recover dividends on the balance of his claim which this fund does not liquidate. This would place him on high vantage-ground above his fellows.

In Gardiner v. Lewis, 7 Gill, 377, an embarrassed debtor called a meeting of his creditors, that they might concert measures for their mutual benefit. The parties were citizens of Maryland, but the debtor owned goods in Vir-

ginia. It was the wish of the debtor to obtain time, and he indulged the opinion that he would thereby be enabled to pay all his liabilities. The conference was adjourned, that the debtor might prepare and lay before them a complete inventory of his effects. One of his creditors, who had been represented at the meeting, had an attachment levied, during the adjournment, on the goods in Virginia. The debtor then made a surrender of his effects under the insolvent laws of Maryland; and the permanent trustee, who was appointed under their system, brought his action of trover against the attaching creditor, for these goods. The supreme court of Maryland, in considering this transaction, said, that when creditors assemble for the purposes above shown, there is a contract *inter se* necessarily implied, that each shall act in good faith, and do nothing to frustrate the common object; a breach of which is a gross fraud.

We think that, to allow Wilson to appropriate this entire fund to himself, would be to sanction a transaction which operates a palpable fraud on the other creditors, whose claims are equally meritorious with his. See, also, Howden v. Haigh, 11 Ad. & El. 1033; Knight v. Hunt, 5 Bing. 432.

In any aspect in which we can view this case, we hold that the decree of the chancellor must be affirmed, with costs.