Jones and Waterbury, *vs.* Horsey, *et al.*

---

GEORGE JONES and S. W. WATERBURY, *vs.* OU-
TERBRIDGE HORSEY, Gar. of BENJAMIN F.
WIGGINS, and ELISHA McCONNEKIN.

The voluntary uniting by a foreign creditor in the recommendation of a trustee for the insolvent, is such an acquiescence in the insolvent laws of this State as to place such creditor upon the same level with domestic creditors, and to compel him to take a dividend of the assets as they do.

Voluntarily calling in aid the insolvent laws of this State, by a foreign creditor, to avoid a deed of the insolvent, valid but for such laws, will have the same effect.

It is within the limits of the authority of an attorney for a foreign creditor to unite for his client in the recommendation of a trustee for an insolvent, and

Jones and Waterbury, *vs.* Horsey, *et al.*

in the absence of proof to the contrary, such act is presumed to be with the approbation of the client, who is as much bound thereby as if it was his own act.

An attorney having charge of a claim may transfer it from the action and decision of such judges as the client has in the first place selected, and submit it to the decision of other persons, and in the absence of proof to the contrary, the legal presumption is that he acted by authority of the client.

The law as it now stands in regard to the rights of foreign creditors is exceedingly hard and oppressive upon the claims of domestic creditors, and this court has no inclination to increase such hardship.

APPEAL from Baltimore county court.

This was an *attachment* upon warrant, issued on the 2nd of May 1850, by the appellants, non-resident creditors of Wiggins and McConnekin, trading under the firm of B. F. Wiggins & Co., and laid in the hands of the appellee, Horsey, permanent trustee in insolvency of Wiggins. The plaintiffs' claim was based upon a judgment recovered by them against Wiggins & Co., in the Circuit Court of the United States for the District of Maryland, on the 7th of April 1847, for $532.82, with interest and costs. The garnishee appeared and plead *non assumpsit* for the defendants, and *nulla bona* of defendants in his hands.

*Exception.* The plaintiffs proved their claim, and that they were citizens of the State of New York, and that the garnishee had in his hands certain sums of money which he had received as permanent trustee of Wiggins.

The garnishee then proved that Wiggins applied for the benefit of the insolvent laws on the 20th of April 1846, and was subsequently discharged thereunder, and that on the 21st of April 1846, the following paper was filed with the insolvent commissioners in the matter of said application, admitted to be signed by O. Horsey and R. J. Brent, who were at that time the attorneys of the plaintiffs in the prosecution of their claim against Wiggins & Co.:

"To the commissioners of insolvent debtors of Baltimore: The undersigned creditors of B. F. Wiggins, an insolvent

debtor, beg leave to recommend Outerbridge Horsey as permanent trustee of said Wiggins.     BRENT & HORSEY, for

"Jones and Waterbury, $550.

"Test,—*Philip J. Tracy, Jr.*"

That said Horsey was on the same day duly appointed such trustee, and qualified as such.

The plaintiffs then asked the following instructions of the court:—1st, that they are not barred from recovering in this action because their attorneys recommended the appointment of a trustee.    2nd, that they are not bound or barred by the application of Wiggins for the insolvent laws, and that all proceedings thereunder are invalid against them, and that they are entitled to any funds derived from the estate of Wiggins undistributed in the hands of the trustee, both of which the court, (FRICK, C. J., and LE GRAND, A J.,) refused, and the plaintiffs excepted and appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*Levin Gale* for the appellants.

The only controversy arises upon the first prayer, for if this be granted the second follows of course, for the appellants being non-resident creditors, their debt is not discharged, unless the act of their attorneys in signing their recommendation has brought them within the laws of Maryland.  We insist, then:

1st. That the recommendation of the appointment of a permanent trustee by the plaintiffs, they being citizens of another State, will not subject them to the effect of the insolvent laws of Maryland so as to bar their debt.

2nd. That an attorney of a foreign creditor, without special authority for the purpose, and simply in virtue of his employment as attorney, cannot do an act the effect of which is to release or discharge the client's debt.

The case of *Clay vs. Smith,* 3 *Pet.,* 411, relied on in the court below, is quite different in principle from this.   Smith,

the foreign creditor, filed his claim and received a dividend from the trustee under the insolvent laws; and the Supreme Court held, that he was bound by the discharge granted in pursuance of those laws. Here the only thing done was to recommend the appointment of a trustee. This amounts to nothing more than a recognition of the existence of the application, but does not submit the debt to the control of those laws. No claim was filed by the appellants, and indeed the commissioners have no power to adjudicate upon claims, so that the recommendation was not in fact offered before a tribunal which had any authority over the contract. But this point has been before several courts in this country, and in all of them it has been held, that nothing short of taking a dividend under the insolvent laws can so bring a foreign creditor under the operation of such laws as to affect his debt. *Van Hook vs. Whitlock*, 26 *Wend.*, 43. *McCarty vs. Gibson*, 5 *Grattan*, 307. *Norton vs. Cook*, 9 *Conn.*, 314. And in England the same distinction between merely appearing to and taking part in the proceedings, and the receipt of a dividend under the insolvent system, has been recognised and acted on. *Phillips vs. Allan*, 8 *Barn. and Cres.*, 477.

As to the second point it seems to be established law, that an attorney can do no act, the effect of which is to release, discharge, or bar his client's debt. Thus, in *Beeche's case*, 8 *Coke*, 115, it was decided, that an attorney could not enter a *retraxit*, because it perpetually barred the plaintiff's right of action, although it was admitted he might suffer a *non suit* which merely affected the remedy. And in *Gaillard vs. Smart*, 6 *Cow.*, 385, the same distinction is taken between the remedy and the cause of action, and the doctrine admitted that an attorney has no right to discharge the latter. It has been repeatedly held, that an attorney has no right to release a defendant from execution without satisfaction, because it discharges the debt. *Jackson vs. Bartlett*, 8 *Johns.*, 362. *Kellogg vs. Gilbert*, 10 *Johns.*, 220. *Simonton vs. Barrell*, 21 *Wend.*, 363. *Card vs. Walbridge*, 18 *Ohio*, 411. Nor has an attorney power to release or compromise his client's

debts or claim, and such *release or compromise is* void, unless sanctioned by the client. *Harrow vs. Farrow,* 7 *B. Munroe,* 126. *West vs. Ball,* 12 *Alabama,* 341. *Gullet vs. Lewis,* 3 *Stewart,* 231. *Langdon vs. Potter,* 13 *Mass.,* 319. *Lewis vs. Gamage,* 1 *Pick.,* 347. *Givens vs. Biscoe,* 3 *J. J. Marshall,* 532. In the case of *Givens vs. Biscoe,* the court say that an attorney cannot release or discharge a debt, "*or do any act that would have that effect.*" And in *Doub vs. Barnes,* 4 *Gill,* 1, the Court of Appeals gave a similar decision, where they say: "As attorney, Mr. Price had no authority to accept for his client the deed of trust;" that is, they decide that an attorney cannot accept a deed of trust for the benefit of his client, the effect of which is to compromise or release the client's rights. The rule to be gathered from the authorities seems to be, that an attorney has authority over the remedies, so long as they do not operate upon the cause of action itself, but when the act to be done, if effectual, will compromise, release or discharge the cause of action, then it is beyond the power of an attorney, acting merely in virtue of his general authority as such. In this case, then, if it be decided that the recommendation, if properly made, would discharge the debt claimed by the appellants, the attorney, according to the authorities cited, had no power to do the act. On the other hand, if the attorney, by virtue of his employment in that capacity, had a right to sign the recommendation, it seems to follow with equal certainty, that such an act could not operate to compromise, defeat, or discharge, his client's cause of action.

*D. C. H. Emory* for the appellee.

1st. We think the case of *Clay vs. Smith,* 3 *Pet.,* 411, conclusive upon the first point, notwithstanding the argument of the counsel for the appellant. That case was decided upon the ground that the creditor, by voluntarily making himself a party to the insolvent proceedings, thereby abandoned his extra-territorial immunity from the operation of the State bankrupt law, and the receipt of the dividend was mentioned not as the *ground* or *consideration,* but as *proof* of

acquiescence. The cases cited on this point by the counsel for the appellant not only do not sustain his proposition, but rather sustain the language of the court in *Clay vs. Smith.* In no one of those cases did the foreign creditor *acquiesce* in the proceedings, but in all he appeared and *opposed* the applicant's discharge, and did *no act of submission to or acquiescence in the law.* In 3 *Caine*, 154, *Van Raugh vs. Van Arsdaln, Kent, C. J.*, says, *"if the plaintiff had given his assent to the proceedings under the insolvent law,"* &c., and from it we infer that any acquiescence or assent to the proceedings was, in the opinion of *Ch. Kent,* sufficient. In *Woodhull vs. Wagner,* 1 *Bald.*, 301, the court say the State law is constitutional, *"if the creditor makes himself a party to the proceedings which lead to the discharge in the State courts."*

2nd. If the appellants were not bound by the act of their attorneys, it would be difficult, if not impossible, for attorneys to know how far their powers extend. This is not a case of *retraxit, release* or *compromise,* and yet in relation to the right of an attorney to compromise Chief Justice Marshall has said: "A court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the judgment of the attorney has been imposed on or not fairly exercised in the case." *Holker vs. Parker,* 7 *Cranch,* 452. This case also decides, that an attorney has the power to refer a cause without special authority from his client. See also on this point *Massey vs. Thomas,* 6 *Binney,* 333. *Wilson vs. Young,* 9 *Barr.*, 101. 16 *Mass.*, 396. 5 *Howard,* 83. The duties and powers of an attorney at law in the prosecution of his client's rights are so familiar to this court, that I forbear to argue the point further.

Eccleston, J., delivered the opinion of this court.

The counsel for the appellants contends, that the recommendation of O. Horsey, as the permanent trustee of Wiggins, even if the recommendation had been made by the plaintiffs in person, was not such a recognition of, or assent to, the proceedings in insolvency as could deprive them of

their right to attach the fund in controversy, they being foreign creditors. He assumes, "that nothing short of taking a dividend under the insolvent laws, can so bring a foreign creditor under the operation of such laws as to affect his debt." In this we think he is certainly mistaken. He refers to *Van Hook vs. Whitlock,* 26 *Wend.,* 43. *McCarty vs. Gibson,* 5 *Grattan's Rep.,* 307. *Norton vs. Cook,* 9 *Conn. Rep.,* 314, and *Phillips vs. Allan,* 8 *Barn. and Cres.,* 477, as sustaining his view of the subject. But in neither of these cases was there an act on the part of the creditor which could be construed into an assent to the proceeding; on the contrary, in each case the creditor opposed the discharge of the applicant and did nothing else, so far as the reports inform us.

In *Clay vs. Smith,* 3 *Peters' R.,* 411, the creditor received a dividend of the insolvent's assets, and that was held to be such an assent to the insolvent laws of the State, as amounted to an abandonment of the extra-territorial immunity of the foreign creditor. And this is a leading case, which has since been referred to in various decisions. But we have never understood it was supposed to establish the doctrine, that nothing less than the actual receipt of a portion of the assets could have a similar effect upon the creditor's claim.

The effect of an insolvent's discharge being under consideration in *Van Raugh vs. Van Arsdaln,* 3 *Caine's Rep.,* 155, Chancellor Kent, in giving the decision of the court, declined expressing any opinion as to the operation of such a discharge, provided the case had been presented in either of several enumerated aspects, among which are, "if the plaintiff had given his assent to the proceedings under the insolvent law, or accepted any dividend of the defendant's estate." It is very true the learned chancellor does not here decide what would be the effect either of assenting to the proceedings or of taking a dividend; but it is equally true, he seems to consider these alternatives as standing upon equal grounds; and, at all events, we cannot believe he entertained the opinion,

that receiving a portion of the estate was the only acquiescence in the proceedings which could take from a foreign claimant his rights, as such, in opposition to the discharge. There is no necessity, however, to rely upon the inference to be drawn from this language of Chancellor Kent, for a decision of the present distinguished chief justice of the United States, in *White, Warner & Co., vs. Winn and Ross,* establishes clearly, that the rights of a foreign creditor, in opposition to the discharge of an insolvent and in preference to the claims of domestic creditors, may be lost by other means than taking a dividend of the assets. This decision may be found in 8 *Gill,* 499, and is also mentioned in 2 *Md. Rep.,* 468. In the case alluded to, an attempt was made in behalf of the plaintiffs, (who were foreign creditors,) in an attachment, laid in the hands of the trustees of an insolvent, to set aside a deed as fraudulent under the statute of 13 *Eliz.* In the progress of the cause the court were satisfied, that under the English statute, and independently of our insolvent laws, the deed was valid. And the court put the plaintiffs in the predicament of being obliged to decide, whether they would submit to a *non suit* in consequence of the validity of the deed, if they intended to deny the validity of the proceedings in insolvency; or whether they would insist upon avoiding the deed under our insolvent laws. By adopting the latter alternative, they could claim under the permanent trustee such interest only as the insolvent laws would award them. So that they were forced to elect between a *non suit* or taking a dividend of the fund in the hands of the trustees. This, it will be seen, was not a proceeding in a State court, having jurisdiction over cases of insolvency, but in the circuit court of the United States. And there the foreign creditors were held bound to submit to the effect and influence of our insolvent system, if they claimed the benefit of that system for the purpose of invalidating a deed, which otherwise would have defeated their entire claim, so far, at least, as the property included in that deed was concerned. Voluntarily calling in aid the insolvent laws to avoid the deed otherwise

valid, is then such an acquiescence in those laws as places a foreign creditor upon the same level with domestic creditors, and compels him to take a dividend of the assets as they do. We see no just reason why voluntarily coming forward and uniting in the recommendation of a trustee, especially when that trustee is the attorney of the claimant, should not produce a similar effect.

Admitting this conclusion to be correct, the appellants' counsel insists, that the recommendation of the trustee in the present case being the act of the attorneys and not of the parties, they cannot be affected by it. The authorities cited in support of this position do not, in our opinion, establish the principle contended for. They are in relation to the inquiry, whether an attorney can enter a *retraxit*, or can release or compromise his client's claim. But this is neither a *retraxit*, a release, or a compromise.

In *Holker vs. Parker*, 7 *Cranch*, 449, it was contended that an attorney could not, without the consent of his client, transfer a cause to other judges than those appointed by law, and place it before a tribunal distinct from the one before which the party himself had chosen to place it. But the Supreme Court, in the opinion delivered by the chief justice, denied the correctness of the position, and held "it to be the practice throughout the Union for suits to be referred, by consent of counsel, without special authority." And in the *Alexandria Canal vs. Swann*, 5 *How. S. C. R.*, 89, a question arose, whether the reference was authorized by the corporation in the manner or by the persons having the right to do so. The court would not inquire what members of the corporation had the power to direct the proceedings in the suit and assent to the reference. And they say, "the corporation, however governed in this particular, was the party defendant in court and was represented by its counsel, and his acts are presumed to be authorised by the party in conducting the suit. This has long been the settled law of Maryland, which is the law of Washington county."

From those two cases it is perfectly plain, that an attorney

having charge of a claim may transfer it from the action and decision of such judges as the client has selected in the first instance, and submit it to the decision of other persons. And in the absence of proof to the contrary the legal presumption is, that in so doing the attorney acted by the authority of the client.

It is admitted here, that when Messrs. Brent and Horsey signed the recommendation, they were attorneys of the plaintiffs for the prosecution of their claim. And we find no proof in the record of any restriction or limitation upon their authority.

The case of *White, Warner & Co., vs. Winn and Ross,* shows there may be instances in which it would be exceedingly beneficial to a foreign creditor that his attorney, on the spot, attending to the management of his claims, should be clothed with power to acquiesce in the proceedings in insolvency. It has not been and we do not presume it will be seriously contended, that if from assenting to the insolvent laws by an attorney, the interest of the client would be promoted, the assent would not then be valid and binding. If binding in such a case, there would be great injustice in holding, that the result of the matter is the only test of the validity of the act, in regard to its influence on the client. If, in the beginning, the effect on the claim should be uncertain, but in the end prejudicial, the client would have the full benefit of the experiment, without its having any injurious influence upon his extra-territorial rights. The law, as it now stands in regard to those rights, is exceedingly hard and oppressive upon the claims of domestic creditors, and we feel no inclination to increase the hardship.

The commissioners in insolvency, under the laws relating to the city of Baltimore, were legally authorised to perform acts having a material bearing and effect in the settlement and final adjustment of claims against the estate of insolvents. Perhaps few, if any, of their acts were more important, as regards creditors, than the selection of trustees. Beyond the limits of Baltimore city, the county courts, in regular session,

had the power to appoint trustees where the insolvents made application to the court. In the recess, a judge of the county court or orphans court could make the appointment.

By the selection of an active and thoroughly competent person, the assets might be much increased beyond what they would be under the management of a man of the opposite character, and it might very well happen that a foreign creditor, by taking a dividend from the efficient trustee, would actually receive a larger share of his claim than he could get by means of an attachment laid in the hands of a trustee, regardless of his duty or incompetent to perform it. And this is a good reason why an attorney should have the authority, at his discretion, when not prohibited by his client, to unite in the recommendation of a trustee. If such an act is within the limits of his authority, (which we think is the case,) then, when done, it is presumed to be with the approbation of his client, unless proof to the contrary is given. Therefore, the recommendation before us must be considered as having the same effect upon the appellants as if it had been their own act. See the cases of *Henck vs. Todhunter*, 7 *H. & J.*, 275, and *Kent vs. Ricards*, 3 *Md. Ch. Dec.*, 392.

Approving the decision of the court below on both prayers, the judgment will be affirmed.

*Judgment affirmed.*