# THE MINCH & EISENBREY COMPANY

*vs.*

# LUCILLE CRAM.

*Plea of Privilege—Exemption from Process—Non-Resident Party to Suit—Motion to Quash Summons.*

A motion to quash a writ of summons on the ground that the defendant, on whom the writ was served, was a non-resident and within the jurisdiction only for the purpose of giving testimony, is in the nature of a plea of privilege rather than one in abatement or to the jurisdiction, and consequently need not give the plaintiff a better writ by stating where defendant is resident.     p. 124

One who leaves the state of his residence to go to another state for the purpose of testifying, even in a cause to which he is a party plaintiff or defendant, is immune from civil process in the state to which he goes, during the time that he is there for such purpose, and a reasonable time before and after in going and returning.     pp. 125-127

That a decision in favor of a defendant who moved to quash the writ of summons took the form of a judgment for costs in addition to the quashing of the writ is not ground for reversal.     p. 127

A judgment for defendant on a motion by him to quash the writ of summons, without a plea having been filed to raise any issue as to the merits, is not *res judicata* for the purpose of a subsequent proceeding.     p. 127

*Decided February 18th, 1920.*

Appeal from the Baltimore City Court (DUFFY, J.).

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Henry L. Drake,* with whom were *Hershey, Machen, Donaldson & Williams* on the brief, for the appellant.

*George Ross Veazey,* with whom were *Haman, Cook, Chesnut & Markell* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

Mrs. Lucille Cram formerly lived in the City of Baltimore in one of the large apartment houses. While so located she purchased from Minch & Eisenbrey furniture to the amount of $1,664.43, as appears from the account filed with the *narr.* in this case.

Subsequently her furniture, including most or all of that so bought from Minch and Eisenbrey, was taken by the managers of the apartment, under color of law, and Mrs. Cram not long thereafter left Baltimore, and so far as the Record discloses has not had since a definite place of residence. At or about this time she caused to be instituted in Baltimore a suit for damages for an alleged illegal taking of her furniture, including that purchased from Minch & Eisenbrey.

She returned to the city somewhat later for the purpose of testifying in the suit so brought, and while here for that purpose was attempted to be served with process issued from one of the Courts of the city, at the instance of Minch & Eisenbrey, the object of which suit was to recover the purchase price of the furniture so obtained from that firm.

In this last suit Mrs. Cram appeared by her counsel and moved to quash the writ of summons and that the writ of summons be stricken out upon the ground that she was not a resident of this city, and being here only for the purpose of giving testimony in the suit which she had brought, was immune from civil process while so engaged.

It is from the action of the Court in quashing the writ, and entering a judgment for the defendant for costs, that this appeal has been taken.

It will be seen that the issue now presented is a very narrow one, and one which does not appear to have been previously directly passed upon by this Court.

One of the grounds upon which the appellant asks a reversal is that the motion, while setting out that Mrs. Cram is not a resident of the City of Baltimore, does not state where she is resident, so that suit may be brought in that jurisdiction.

It is laid down in such writers as *Poe on Pleading, Chitty* and *Stephen,* that all pleas in abatement must give the plaintiff a better writ, and if they do not they are faulty. Although a plea to the jurisdiction is not properly a plea in abatement, yet it should also state what Court has jurisdiction; and in the forms of pleas in *Mr. Poe's* work the plea to the jurisdiction not only states that the defendant does not reside in the county where the suit is brought, but it goes further and states the county of his residence. See also *Fisher on Pleading,* page 41.

Where the appellant falls into error is endeavoring to treat the motion filed on behalf of Mrs. Cram as though it were a plea in abatement. As was clearly pointed out by JUDGE IRVING in *Tyler* v. *Murray,* 57 Md. 437, a plea to the jurisdiction, though denominated a plea in abatement, differs from it in some particulars. It partakes also sometimes of the character of a plea of privilege. *Chitty* and *Stephen,* in their respective works on pleading, treat of this under a special head, and as differing from an ordinary plea in abatement.

The motion of Mrs. Cram for quashing the writ of summons clearly appears to have been a question of privilege rather than a plea in abatement or even to the jurisdiction. Nowhere is it laid down or even suggested that that which is a requisite in the case of a plea in abatement to give the plaintiff a better writ applies at all where a question of privilege is involved.

The next point made is the one of greatest importance in the case, and relates to the privilege or immunity from civil process of a party plaintiff to a case. The general rule is that witnesses who leave a state of which they are residents, and go to another state for the purpose of testifying, shall be exempt from civil process in the state to which they have gone during the time that they are there for such purpose and a reasonable time before and after in going and returning.

This immunity has long been recognized under the common law and dates at least from the reign of Henry VI, and was, therefore, a part of the common law at the time of the separation of the American Colonies from England, and in the common law states today is in full force, except as it may have since been modified by statute.

Whether this immunity in favor of a witness extends to and embraces the parties to a cause, plaintiff and defendant, is a question upon which there has been some diversity of decisions, both in England and in this country, but the great weight of authority in the United States today extends the privilege to parties, both plaintiff and defendant. In Connecticut, Rhode Island, Missouri and Nevada, following the line mapped out in *Bishop* v. *Vose,* 27 Conn. 1, the Courts have denied the extension of the privilege; while in all of the other states the extension has been granted to parties to a suit, whether plaintiff or defendant, when they went into another jurisdiction to testify in cases brought by or against them.

There is a long line of decisions in the Federal Courts upholding this immunity or privilege of the parties, and the question reached the Supreme Court of the United States, and was decided in the case of *Stewart* v. *Ramsay,* 242 U. S. 128. In disposing of that case JUSTICE PITNEY, who wrote the opinion, reviews the question with a wealth of detail, and it was there decided that the immunity from subpoena extended to the parties to a suit who had come within a particular jurisdiction simply for the purpose of testifying. This

decision has since been followed in a number of cases in the Federal Courts: *Smith* v. *The Canal Zone,* 249 Fed. 277; *Union Water Development Co.* v. *Stevenson,* 256 Fed. 981, and *Filer* v. *McCormick,* 260 Fed. 309, 314.

In fact the tendency has been rather to broaden than to narrow the immunity by extending it so as to apply not merely to the parties to a suit, but to those who might have gone within a certain jurisdiction in an official capacity merely. 21 *R. C. L.,* p. 1306, *et seq.*

The appellant in this case relied mainly upon the decision of this Court in *Mullen* v. *Sanborn,* 79 Md. 364, and the language used in that opinion gives some color to the contention. It seems to have been assumed that the effect of that decision was to overrule the conclusion reached in *Bolgiano* v. *Gilbert Lock Co.,* 73 Md. 132; but it will be observed that in *Mullen* v. *Sanborn* the Court, in order not to be misunderstood, carefully distinguishes that case from the *Bolgiano Case;* and the subject was again considered in *Long* v. *Hawken,* 114 Md. 234, and *Blick* v. *Cockins,* 131 Md. 625, and the authorities are quite fully collected in those two decisions. In both of the cases, however, the question was raised by one who came here as a party defendant, and this Court held that in such a case the immunity from summons was complete.

In a number of states the question has been presented exactly in the form in which it appears in this case, and it has been uniformly held that the plaintiff, as well as the defendant, was entitled to immunity. *Diamond* v. *Earle,* 217 Mass. 499; *Leatherby* v. *Shaver,* 73 Mich. 500; *In re Healey,* 53 Vt. 694; *Sofge* v. *Lowe,* 131 Tenn. 626; and the subject is fully discussed in a note in 42 *L. R. A.* ( *N. S.*) 1101, and *L. R. A.,* 1915 A, 694. See also note to case of *Diamond* v. *Earle, Ann. Cas.* 1915 D, 984; 21 *R. C. L.,* pp. 1306-7; *Roberts* v. *Thompson,* 149 App. Div. 437, 134 N. Y. Supp. 363.

In view of this weight of opinion the ruling of the lower Court upon the motion to quash on this ground was correct.

The third ground of objection is a purely technical one relating to the form of the judgment in the Court from which this appeal was taken. According to the record it was a judgment for the defendant for costs; the proper form would have been simply "Writ quashed," as laid down by Mr. Poe. The appellant's contention at this point is, that under the Act of 1894, Ch. 180, codified in the Local Laws of Baltimore City as Sec. 305, it should not have been made a judgment for the defendant, because under that section the plaintiff would have the right to have his writ renewed from term to term, until the defendant was summoned, or as long as the plaintiff desired to have the effort continued, and that this was a valuable right as affecting a question of limitations.

It was also argued on behalf of the appellant that a judgment for the defendant would amount to *res adjudicata* in any subsequent proceeding. In this last statement the defect of the appellant's contention is that even a cursory inspection of the record would have disclosed that the judgment was not rendered upon the merits of the case, that there was not even a plea filed in the case to raise any issue, and, therefore, that there was no such adjudication as to make the present suit *res adjudicata* as between the parties.

Technically, of course, there could be no judgment for the defendant when, by the quashing of the writ of summons and the return of the sheriff, there was no defendant in the case and, by the quashing of the writ and striking out of the return, the case was left in the same condition as it would have been in the event of a return of *non est,* up to which point, of course, the plaintiff in the case would be liable for the costs of the suit. This error was manifestly clerical, and too trivial upon which to base a reversal of the judgment.

> *Judgment affirmed, with costs in this Court to be paid by the appellants.*