FRANK FEUSTER ᴇᴛ ᴀʟ. *v.* JOSEPH REDSHAW.
[No. 67, January Term, 1929.]

*Decided April 4th, 1929.*

The causes were argued before Bonᴅ, C. J., Pᴀᴛᴛɪsᴏɴ, Uʀɴᴇʀ, Aᴅᴋɪɴs, Oꜰꜰᴜᴛᴛ, and Pᴀʀᴋᴇ, JJ.

*Joseph Fax,* for the appellants.

*James U. Dennis,* for the appellee.

Pᴀʀᴋᴇ, J., delivered the opinion of the Court.

On September 6th, 1928, three actions at law for damages growing out of alleged negligence in the operation of two automobiles were begun in the Court of Common Pleas of Baltimore City against Joseph H. Redshaw and Joseph Whitely, the automobile owners. The first suit was by the infant, Frank Feuster, for personal injuries sustained; the second was by the father of the infant for expenses and loss of services growing out of the injuries suffered by the son; and the third was by William G. Scherbel for damages be-

cause of injuries sustained by himself and to his automobile. In every one of these three cases the *nisi prius* court quashed the summons issued for Redshaw, and struck out the return of the sheriff that Redshaw had been summoned. An appeal was taken in every case. As the point involved is the same in every action, and was decided on the same relevant facts, the parties commendably agreed upon what should go in the record, and that the decision of this court shall apply to all the cases.

It appears from the record that on July 31st, 1928, Joseph H. Redshaw, a resident of the State of Pennsylvania, was driving his automobile in Baltimore City, in this state, when his automobile collided with one driven by Joseph Whiteley; and, as a result of this accident, an infant, Frank Feuster, and William G. Scherbel, were injured and an automobile owned by the latter was damaged. Redshaw was arrested on the same day on a charge of having violated a provision of the motor vehicle laws of the State of Maryland, and was forthwith taken by a police officer before a magistrate of the traffic court of Baltimore City, who required him to post collateral for his appearance in that court at the time of the trial of the case of the State of Maryland against him for the criminal charge of which he was accused. The police officer then immediately took him before a police magistrate at a police station in Baltimore City, where he was charged with the crime of assault and battery upon the body of the injured child, and, thereafter, was released to appear before said police magistrate for the trial of the crime of which he was accused in the case of the State of Maryland against him on the magistrate's criminal docket. Redshaw went to his home in Pennsylvania and there remained. The criminal case against him in the traffic court was set for trial at nine o'clock in the morning of September 6th, and the other criminal charge was fixed for trial at the police station on the afternoon of the same day. In order to be present at the several trials, Redshaw left his home on the evening of September 5th, and arrived in Baltimore the next morning, appeared, was tried, and judgment was rendered in both cases, where-

upon Redshaw left Baltimore City for his residence in Pennsylvania on the first available train after the trial of the second case. The sole purpose Redshaw had in leaving his domicile in the State of Pennsylvania and coming into the State of Maryland, and there remaining only for such length of time as was necessary for the trial of the two cases, was to appear at each trial in order to prevent the forfeitures of the collateral deposited for his appearence at the trial in the traffic court; to defend each prosecution, and, in the course of defense, to testify in his own behalf in each case.

Redshaw accordingly went to the traffic court at nine o'clock in the morning and, about half an hour later, while he was waiting in the court room for his case to be called for trial before the presiding justice, and to testify as a witness and present his defense to the crime with which he was charged, a deputy sheriff of Baltimore City, in the actual presence of the presiding justice, who was then engaged in the trial of cases in that day's assignment, produced a summons, issued out of the Court of Common Pleas of Baltimore City in the said case of Frank Feuster, an infant, by Frank M. Feuster, his father and next friend, against the said Joseph Redshaw and Joseph Whiteley, and then and there served said summons upon the said Joseph Redshaw; and, in consequence thereof, the said defendant was returned summoned in said action, where he appeared specially for the sole purpose of filing his motion to quash the writ of summons.

The law is settled in Maryland that a nonresident, who comes into this state either as a witness or as a party plaintiff or defendant in a civil action is, while for that purpose coming, staying, and returning, in good faith and without unreasonable delay, exempt from the service of process for the commencement of a civil action against him in this state. *Bolgiano v. Gilbert Lock Co.,* 73 Md. 132; *Long v. Hawken,* 114 Md. 234; *Blick v. Cockins,* 131 Md. 626; *Minch & Eisenbrey Co. v. Cram,* 136 Md. 122.

The only exception to the uniform enforcement of this rule

that is known to the court is the decision in *Mullen v. Sanborn & Mann*, 79 Md. 364. In that appeal the exemption was denied in favor of a nonresident party who, after having caused an attachment to be issued on original process against a citizen of this state that is quashed, is, while voluntarily appearing to testify in his own behalf at the trial of the short note case, summoned in an action against him at that time begun in this state by the debtor for damages for wrongfully and maliciously causing the attachment to be issued. As pointed out in the opinion, the nonresident had availed himself of a drastic remedy, which was not allowed except upon having first given a bond of indemnity, which in most cases is the only source of compensation for an injury resulting to the alleged debtor, but which cannot be put in suit unless an action against the plaintiff for wrongfully suing out the attachment has first been prosecuted to judgment. And, furthermore, the court stated that the value of the bond, as a security to the alleged debtor and as a means of preventing the fraudulent and reckless abuse of the process of the court, will be greatly diminished, if not, in many cases, made absolutely worthless, if the nonresident plaintiff could not be sued in the jurisdiction whose processes he had invoked, but only where he resided. The language used by the court in this connection is significant of the exceptional nature of the case, and of the ground upon which the decision rests: "The appellee having failed to prosecute his attachment with success, and the appellant having sued him in the court where the bond was filed to ascertain the damages, so that he could avail himself of a suit on the bond to make himself whole, we think the appellee should be held to have waived his right, if he had any, to exemption from summons, and should at least, be put in the same and no worse situation than resident suitors would be under like circumstances. Having voluntarily appeared in our courts to take advantage of this peculiarly harsh remedy, and having given bond, without which he could not have attached, he ought not to be allowed to assume a position which would enable him to escape all liability for

his wrongdoing and at the same time destroy the efficacy of his bond." Pages 366-368.

The authority of this case is restricted by its reasoning and by the later decisions to actions in which the facts would present a similar situation, but otherwise the rule of immunity unquestionably prevails in civil cases. *Blick v. Cockins,* 131 Md. 633. There is, however, no precedent to follow where the nonresident was summoned while present because of a criminal prosecution against him. In *Guerreni v. Sainsbury,* 139 Md. 246, that question was on the record but was not considered, as the appeal was dismissed because it was prematurely taken. In other jurisdictions, there is great conflict of authority, whether the attendance of the nonresident was due either to a civil or to criminal proceedings. So, the Maryland rule will be found to be both supported and rejected. 25 *L. R. A.* 724; 27 *L. R. A.* (N. S.) 333; 51 *L. R. A.* (N. S.) 328; 14 *A. L. R.* 771; 40 *A. L. R.* 83, 93; 46 *A. L. R.* 316.

No useful purpose will be served by stating and discussing these irreconcilable decisions of other appellate tribunals, as our own reports illustrate the principles upon which the question, whether or not a nonresident is exempt from service of process issuing in an action instituted against him in a court of this state while he is in attendance upon the trial of a criminal proceeding either as the accused or as a witness, should be decided.

The reason for the exemption is because it is grounded on public policy and necessary for the due administration of justice. The rule at once tends to assure the attendance of nonresident witnesses and suitors, and the free and complete presentation of the case in a trial in which the witness and the parties will not be distracted, harassed, or intimidated by the prospect of other litigation. So beneficial is the rule that the inclination of the court is to extend its scope. *Bolgiano v. Gilbert Lock Co.,* 73 Md. 132, 134, 135; *Long v. Hawken,* 114 Md. 234, 236, 237; *Blick v. Cockins,* 131 Md. 625, 633; *Minch & Eisenbrey Co. v. Cram,* 136 Md. 122, 126.

These reasons are as applicable to criminal prosecutions as

they are to civil actions, and, on principle, should have no different conclusion. The decisions, which hold that the exemption does not apply to parties arrested in criminal proceedings, put it usually on the ground that in a civil case the appearance of the parties and witnesses is purely voluntary, while the accused's attendance could be enforced by arrest, extradition, or other form of legal compulsion. It is inaccurate to say of a nonresident defendant that his appearance in a suit to defend his rights is wholly voluntary. He comes under the compulsion of interest or necessity. So, the four Maryland decisions cited do not indicate that there is any distinction to be based upon whether the exemption is claimed by a voluntarily appearing plaintiff or by an involuntarily appearing defendant. *Supra.* When the accused in this case returned to Pennsylvania after the two criminal charges had been preferred against him and he had been released, he might possibly have obviated the necessity for his return for the trials by remaining away and forfeiting the collateral deposited. He was no longer in custody and he could choose to return for trial or to stay away. And it is a sound principle of law that does not subject an accused party, while presumed by the law to be innocent, to the peril of a surrender of his privilege of being sued in a civil action in his own state, by appearing and defending himself in the jurisdiction where he is charged with the crime. However, the rationale of the rule does not depend upon the voluntary nature of the nonresident's appearance, but, as previously indicated, upon broad grounds of public policy and individual rights. "To be sued in the jurisdiction where one resides is an inviolable right which is the subject of surrender only by voluntary action, and is justly said to be the wise indulgence of the law. The absence of fraud will not entitle the service to be declared effectual." *Alderson on Judicial Writs & Process,* sec. 127, p. 268 *et seq.* And, as complementary to this quotation, the following may be added: "The privilege which is asserted here is the privilege of the court, rather than of the defendant. It is founded on the necessities of the judicial administration, which would be often embarrassed, and some-

times interrupted, if the suitor might be vexed with process while attending to testify. Witnesses would be chary of coming within our jurisdiction, and would be exposed to dangerous influences, if they might be punished with a lawsuit for displeasing parties by their testimony; and even parties in interest, whether on the record or not, might be deterred from the rightfully fearless assertion of a defense, if they were liable to be visited on the instant with writs from the defeated party." (Quotation in *Stewart v. Ramsay,* 242 U. S. 128, 130, from *Parker v. Hotchkiss,* 1 Wall, Jr., 269.) *Church v. Church* (App. D. C.), 270 Fed. 361; *Watson v. Judge of Superior Ct.,* 40 Mich. 729 (Cooley, J.); *Michaelson v. Goldfarb,* 94 N. J. L. 352; *Halsey v. Stewart,* 4 N. J. L. 366; *Gilpin v. Cohen & Benjamin,* L. R. 4 Exch. 131; *Kaufman v. Garner,* 173 Fed. 550.

While the authorities are in conflict, the trend of our decisions and the weight of authority support the conclusion that the defendant was immune from the service of process at the time of the summons in every one of three cases on this appeal.

> *Judgment affirmed, with costs, in the cases of Frank Feuster, an infant, by Frank M. Feuster, his father and next friend v. Joseph H. Redshaw and Joseph Whitely; Frank M. Feuster v. Joseph H. Redshaw and Joseph Whitely; William G. Scherbel v. Joseph H. Redshaw and Joseph Whitely.*