MARY MARGOS AND MIKE MARGOS *v.*
GUS MOROUDAS
(Two Cases)
[No. 7, January Term, 1945.]

*Decided January 31, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*M. William Adelson* for the appellants.

*Roszel C. Thomsen,* with whom were *Harris & Medwedeff* and *Clark, Thomsen & Smith,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

Mary Margos, a resident of the State of Pennsylvania, one of the appellants, on June 16, 1940, was injured while riding in an automobile in the State of Pennsylvania, operated by the appellee, Gus Moroudas, a resident of

the State of West Virginia. The automobile was owned by a third party who carried insurance.

Suit was entered in the Baltimore City Court on April 9, 1943, by Mary Margos through Bloom & Bloom and Bernard M. Savage, her attorneys, against Gus Moroudas for injuries received while riding in the automobile aforesaid. On the same date Mike Margos, the husband of Mary Margos, also a resident of Pennsylvania, entered suit in the same Court through the same attorneys against the same defendant for loss of his wife's services and for payment of hospital and medical bills for his wife which he claimed it was necessary for him to assume. On April 12, 1943, the defendant, Gus Moroudas, being in Baltimore, was served with a writ of summons in both suits.

The defendant, on June 8, 1943, appearing specially, filed a motion to quash the writs of summons and to set aside the returns of the sheriff thereon on the ground that the plaintiffs are citizens and residents of the State of Pennsylvania and the defendant, a citizen and resident of the State of West Virginia; that he does not now nor did he ever transact any business in the State of Maryland. He further alleged that the defendant was persuaded by the plaintiffs through circumstances set out therein to come to Baltimore City and that he did not know that he was being inveigled into the State of Maryland for the purpose of being served with the writs of summons in this or any other action. After testimony taken in open court on the motions, the Judge of the Baltimore City Court in both cases quashed the writs of summons and set aside the returns of the sheriff thereon, and from that action the appellants in the two cases appeal to this Court.

At the hearing on June 20, 1944, on the question at issue, the defendant testified that he met the plaintiffs at a wedding at the time of the alleged accident in June, 1940, and he had not known them before. In December, 1942, he was approached by Mike Margos and asked to go to the office of Bloom & Bloom, attorneys in Wash-

ington, Pennsylvania, who he thought were the insurance people. He said he went to that office and further: "I just sat in what I thought was the library, I think it was his office, a person came in, said he'd make a call, and he came back and said he could not make a contact." He was next approached by Mike Margos the first week in April, 1943, who gave him forty dollars ($40) for expenses and a slip of paper on which was written the name and telephone number of Mr. Bernard Savage, a lawyer, and who asked him to go to Baltimore and when he got there to have a person whom the defendant knew call up Mr. Savage and tell him that he was there. He further testified: "He said I'd help him with the insurance." He was not told that he would be served with a process. He came to Baltimore to call Mr. Savage up, not to see him. He said he thought that the call was probably to make an appointment to go to see the lawyer because he probably wanted a few more facts about the accident, and he thought he was the insurance man and that Mike told him it would help with the insurance; that he had no other business in Baltimore of any kind and that the only reason he came to Baltimore was because Mike Margos gave him forty dollars ($40) to pay his expenses and asked him to go. He further testified that he did not know a case was coming up.

As a result, he left for Baltimore the day after he was given the forty dollars ($40). After his arrival in Baltimore, he went to Phillips' Restaurant on April 12th and had the proprietor whom he knew call up Mr. Savage, and he then sat in the restaurant and ate. While he was eating, a man came in and asked for him, and after he was pointed out sitting at a table eating, the man gave him two papers, one notifying him of a suit by Mike Margos for ten thousand dollars ($10,000) and the other of a suit by Mary Margos for twenty-five thousand dollars ($25,000). He said he read the papers after he got them and left that evening to go back to West Virginia.

Mr. Bernard M. Savage, attorney of Baltimore, testified that he had now stricken out his appearance in these

cases, and further that in December, 1942, he received a telephone call from Mr. Bloom regarding these cases and subsequently received a letter with a statement of facts. After correspondence, he prepared the suit papers, forwarded them to Bloom & Bloom who signed them, returned them to him and he filed them on April 9th. At that time he did not know of any Maryland or Baltimore address of the defendant or any local address where he could be served. He said that Bloom & Bloom wrote him a letter saying that they would give him instructions as to when and where the defendant could be found in Baltimore City. He further said that two or three days after the suit was filed, he received a telephone call from a man who said he was Mr. Phillips and who said that Mr. Gus Moroudas, the defendant, was in his place at that time. Mr. Savage said he then notified the sheriff and told him to make service on the defendant at that address.

Neither of the appellants testified at the hearing on the motion.

The testimony which is not contradicted shows that the defendant did not know that suit had been entered against him in Maryland and that he came to Baltimore through the efforts of Mike Margos and Bloom & Bloom, attorneys for both appellants, to give information to a person who he thought was the insurance company lawyer for the purpose of helping the appellants get insurance which was carried by a third party. The testimony does not show that the appellee intended to use any improper methods to help appellants collect the insurance. His intended help to the appellants, according to the testimony, was to be the giving of the facts of the accident to the insurance representative.

Statutes of limitations having run against the plaintiffs in both the States of Pennsylvania and West Virginia, it is not contended by the appellee here that merely because neither the defendant nor the plaintiffs were residents of Maryland, the Court here was without jurisdiction in these cases. *Hieston v. National City Bank*

*of Chicago,* 132 Md. 389, 396, 104 A. 281. The appellee relies on his contention that the service of process on the defendant was invalid. The law is settled in Maryland that a nonresident who comes into this State either as a witness or as a party plaintiff or defendant in a civil action is, while here for that purpose, either coming, staying, or returning in good faith and without unreasonable delay, exempt from the service of process for the commencement of a civil action against him in this State. *Feuster v. Redshaw,* 157 Md. 302, 304, 145 A. 560.

The appellants in their contention that the writs of summons should not be quashed rely strongly on the case of *Jaster v. Currie,* 198 U. S. 144, 49 L. Ed. 988. In that case it was alleged that the plaintiff had brought a previous action in the State of Nebraska for the same cause and afterwards served notice upon the defendants' attorney that the plaintiff's deposition would be taken in Ohio at a certain place on September 5, 1899, for use in the cause. The defendant was advised by his attorney to be present and went to Ohio for that purpose only. The deposition was taken and the defendant then went to his father's house in the same county for the night of September 5th. On September 8th in the early morning, being the earliest time convenient for leaving his father's home for Nebraska, he took the train back. The writ in the Ohio suit was received and served on September 7th. It was contended that the notice to take the deposition was simply a ruse and was given for the purpose of enticing the defendant into Ohio and for no other reason. The Supreme Court of the United States, in holding that the service of the writ was not unlawful, pointed out that there was no misrepresentation, expressed or implied, with regard to anything, even the motives of the plaintiff; further that the parties were at arm's length; that the taking of the deposition needed no justification, and it could be taken arbitrarily if the plaintiff chose and that defendant could be served with process if he saw fit to linger in Ohio.

There are several material differences between that case and the one at bar. Moroudas did not come to this State to have his deposition taken. In the case now before us there had been no former suit between the parties, and they were not at arm's length, and the defendant had no reason to believe that they would ever be at arm's length. The defendant had no reason to think that he would be served with process and came to this State at Mike Margos' request for the sole purpose of helping the plaintiffs with the insurance by giving the facts of the accident. He was not told that he had been sued in this State and that the purpose of his visit was the service of process upon him. He was therefore directly misled by the statement of the plaintiff. Whether the defendant was covered by the insurance policy carried by the owner of the car is not before us here. It was pointed out by the Supreme Court of the United States in the case of *Ex parte Johnson,* 167 U. S. 120, at page 126, 42 L. Ed. 103, that in a civil case, if a defendant be brought within the process of the Court by a trick or device, the service will be set aside and, further, that the law will not permit a person to be decoyed within the jurisdiction for the purpose of being compelled to answer a mere private claim.

Although the precise question now before us has not been previously passed upon by this Court, authorities elsewhere hold that personal service on a nonresident will be set aside, if procured by fraud, trickery, or artifice and a motion to quash the service is made. The rule is well stated in 42 *American Jurisprudence, Process,* Par. 35, p. 32: "Generally. Personal service of process, if procured by fraud, trickery, or artifice is not sufficient to give a court jurisdiction over the person thus served, and service will be set aside upon proper application. Relief is accorded in such cases not because, by reason of the fraud, the court did not get jurisdiction of the person of the defendant by the service, but on the ground that the court will not exercise its jurisdiction in favor of one who has obtained service of his summons by unlawful

means. Thus, if a person resident outside the jurisdiction of the court and the reach of its process is inveigled, enticed, or induced, by any false representation, deceitful contrivance, or wrongful device for which the plaintiff is responsible, to come within the jurisdiction of the court for the purpose of obtaining service of process on him in an action brought against him in such court, process served upon him through such improper means is invalid, and upon proof of such fact the court will, on motion, set it aside."

Some of the cases in which process has been set aside by the Courts on account of fraud, trickery or other device practiced by the plaintiff on the defendant follow: In *Dunlap v. Cody*, 31 Iowa 260, the defendant, a carpenter, was induced to go into the State of Illinois to look at the site of a proposed elevator and while there, was served with process in order to avoid the bar of the statute of limitations of the State of Iowa. In *Townsend v. Smith*, 47 Wis. 623, 3 N. W. 439, the defendant, a newspaper publisher in Chicago, was induced by a false and fraudulent pretense of securing advertising to go to Wisconsin, with his expenses paid, so that he might be served with process in a suit for libel. In *Wood v. Wood*, 78 Ky. 624, defendant was induced to drive a pair of horses and wagon, exempt from execution in Kentucky, to Tennessee under the representation that he could make a profit by hauling from Tennessee to Kentucky and while in Tennessee, the defendant's team was seized under an execution. In the case of *Kelly v. Citizens Farmers Bank*, 174 Okl. 380, 50 P. 2d 734, one in which this question was fully discussed, the defendant was induced to go to another county to talk settlement and was served within ten or fifteen minutes after he reached plaintiff's attorney's office as a result of a telephone conversation between the deputy sheriff and plaintiff's attorney. In *Cavanagh v. Manhattan Transit Company*, 133 F. 818, the defendant was enticed from the State of New York into New Jersey to talk about a settlement and while there was served with process. In *Empire Mfg. Co. v.*

*Ginsburg,* 253 Ill. App. 242, the defendant was enticed into the jurisdiction for the purpose of settlement of a case. He was met at the station by the agent of the plaintiff and was conducted to an automobile for the purpose of going to plaintiff's office. In the automobile was a deputy sheriff who served him with summons. In *Steiger v. Bonn,* 4 F. 17, the defendant was enticed from New York to New Jersey by a telegram, requiring his attendance at a certain convention, ostensibly sent by the president of the convention and which telegram was not sent by the person whose signature appeared thereon. In *Williams v. Reed,* 29 N. J. L. 385, the defendant was inveigled into going from New York into New Jersey under the representation that he was needed to explain something about a factory while the real purpose was to serve him with a writ of summons. In *Sessoms Grocery Company v. International Sugar Feed Company,* 188 Ala. 232, 66 So. 479, the defendant, a nonresident, was induced to enter the State of Alabama to receive cash payment for a carload of food stuff, and when he arrived, instead of being paid, service was obtained in a suit for a breach of an agreement of sale. See also *Frawley et al v. Pennsylvania Casualty Company,* 124 F. 259; *Blandin v. Ostrander,* 239 F. 700; *Wyman v. Newhouse,* 93 F. 2d 313; *Fitzgerald et al v. Fitzgerald,* 137 U. S. 98, 34 L. Ed. 608; Annotation, 37 A. L. R. 1255; *Robinson v. Bossinger,* 195 Ark. 445, 112 S. W. 2d 637.

It was held in *Commercial Mutual Accident Co. v. Davis,* 213 U. S. 245, 53 L. Ed. 782, that where there was a bona fide attempt to settle the controversy between the parties, service of process should not be quashed when the summons was made on a nonresident party coming to the state for that purpose, upon failure to reach a settlement.

The Courts in the cases hereinbefore cited gave many reasons for quashing the service in those cases. Courts are not established for the purpose of aiding fraud, deceit, or wrong, but to prevent such things. The law will not permit a party to take advantage of his own

wrongs. It is a fraud upon the law, and Courts will not aid the fraud or deceit. The aid of Courts should not be successfully invoked to promote the practice of trickery and deceit. If a defendant is within the jurisdiction of the Court by means of fraud or trickery of the plaintiff, no act accomplished thereby can be allowed to stand. There is very little difference between enticing a person from one jurisdiction to another for the purpose of getting process on him and by carrying him by force from one jurisdiction to another to be served with process. A fraud or trick usually has a fair face. It would not succeed without it.

From the evidence before this Court, no other conclusion can be drawn than that the defendant, Gus Moroudas, was enticed into the State of Maryland through trickery and artifice on the part of Mike Margos and the Pennsylvania attorneys, and under the great weight of authority, the appellants should not be allowed to profit thereby. As these attorneys also represented Mary Margos, she is bound by their acts. This Court has held in a long line of cases that whenever the appearance of an attorney is entered of record, it is always presumed as done by the authority of the party for whom the attorney professes to act, and whatever is done in the progress of the cause by the attorney so appearing is considered as done by the party and binding upon him. *Jones v. Horsey,* 4 Md. 306, 59 Am. Dec. 81; *Ward v. Hollins,* 14 Md. 158; *Dorsey v. Kyle,* 30 Md. 512, 520, 96 Am. Dec. 617; *Lanahan v. Heaver,* 77 Md. 605, 26 A. 866, 20 L. R. A. 759; *Houston v. Wilcox,* 121 Md. 91, 100, 88 A. 32. Mary Margos not having testified to the contrary, we must presume that her attorneys' acts were her acts. The writs of summons were properly quashed in both cases.

*Orders of Court affirmed, with costs, in both cases.*